# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., MATTHEW KRAUSE, DONNA BRAMSON, and S.P., a minor, by his next friend and father, Anthony Perkins,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, in his official capacity as Secretary of Transportation, FEDERAL AVIATION ADMINISTRATION, STEPHEN M. DICKSON, in his official capacity as Administrator of the FAA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROCHELLE P. WALENSKY, in her official capacity as Director of the CDC, SHERRI A. BERGER, in her official capacity as Chief of Staff of the CDC, U.S. DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, TRANSPORTATION SECURITY ADMINISTRATION, DAVID P. PEKOSKE, in his official capacity as Administrator of the TSA, and the UNITED STATES OF AMERICA,<br><br>*Defendants.* | Civil Action No.: 22-209 |

## COMPLAINT

Plaintiffs Family Research Council Action, Inc., Matthew Krause, Donna

Bramson, and S.P., a minor, by through his next friend and father, Anthony Perkins

(collectively "Plaintiffs"), by and through the undersigned attorneys, complain as follows against Defendants Joseph R. Biden, Jr., President of the United States; the U.S. Department of Transportation and its Secretary, Peter P. Buttigieg; the Federal Aviation Administration and its Administrator, Stephen M. Dickson; the U.S. Department of Health and Human Services and its Secretary, Xavier Becerra; the Centers for Disease Control and Prevention and its Director, Rochelle P. Walensky, and its Chief of Staff, Sherri A. Berger; the U.S. Department of Homeland Security and its Secretary, Alejandro Mayorkas; the Transportation Security Administration and its Administrator, David P. Pekoske; and the United States of America (collectively "Defendants").

## INTRODUCTION

1.      President Biden issued Executive Order 13998 the day after he was inaugurated as President of the United States, in which he directed the U.S. Departments of Transportation, Health and Human Services, and Homeland Security, as well as their components the Federal Aviation Administration, Centers for Disease Control and Prevention, and Transportation Security Administration, respectively, to continue mandating the wearing of masks on commercial airlines in the United States to stop the spread of COVID-19.   Those agencies and their components complied with those orders, giving rise to the policy mandate Plaintiffs challenge in this action.

2.      The Administrative Procedure Act requires that a district court must vacate and set aside agency actions that are arbitrary and capricious.   That

2

requirement imposes a standard that is typically easily met, because as a general matter an agency engages in reasoned decisionmaking based on substantial evidence. Yet the science does not support the FAA's, CDC's, and TSA's mask mandate on airplanes. The science shows no significant link between the wearing masks and slowing the spread of COVID-19, and separately shows that the air passengers breathe on a commercial airline is among the cleanest and safest of any environment on earth. Furthermore, growing scientific literature documents the harms resulting from the wearing of masks, especially on children. The mask mandate is accordingly arbitrary and capricious.

3.      More than that, however, the Mask Mandate was scheduled to expire on March 18, 2022. However, Defendants have extended the Mask Mandate at least until April 18, 2022, and left open the possibility of additional extensions. These actions of maintaining and extending the Mask Mandate is arbitrary and capricious, and accordingly must be vacated immediately.

## PARTIES

4.      Plaintiff Family Research Council Action, Inc., (FRC Action) is a 501(c)(4) nonpartisan, nonprofit organization incorporated and headquartered in Washington, D.C. FRC Action has over 1,400 members who reside in Texas, including members who reside in the Fort Worth Division of the Northern District of Texas.

5.      Plaintiff Matthew Krause serves in the Texas House of Representatives from the 93d District.  He is a U.S. citizen and a resident of Tarrant County.  As such, he resides in the Fort Worth Division of the Northern District of Texas.

6.      Plaintiff Donna Bramson is a U.S. citizen and a resident of Tarrant County.  As such, she resides in the Fort Worth Division of the Northern District of Texas.

7.      Plaintiff S.P. is a minor child.  S.P. is a U.S. citizen who resides in Louisiana.  He is participating in this litigation through his next friend and father, Anthony Perkins.

8.      Defendant Joseph R. Biden, Jr., is the President of the United States of America, and issued the Executive Order (EO) giving rise to the mask mandate.  He is sued in his official capacity only.

9.      The U.S. Department of Transportation (DOT) is an agency of the United States Government and is partially responsible for implementing the mask mandate.

10.     Peter P. Buttigieg is the Secretary of DOT, and is sued in his official capacity only.

11.     The Federal Aviation Administration (FAA) is an agency of the United States Government, and the component of DOT principally responsible for implementing the mask mandate EO for that Department.

12.     Stephen M. Dickson is the Administrator of the FAA, and is sued in his official capacity only.

13.     The U.S. Department of Health and Human Services (HHS) is an agency of the United States Government and is partially responsible for implementing the mask mandate.

14.     Xavier Becerra is Secretary of HHS, and is sued in his official capacity only.

15.     The Centers for Disease Control and Prevention (CDC) is an agency of the United States Government, and the component of HHS principally responsible for implementing the mask mandate EO for that Department.

16.     Rochelle P. Walensky is Director of the CDC, and is sued in her official capacity only.

17.     Sherri A. Berger is Chief of Staff of the CDC, and issued that agency's mask mandate.  She is sued in her official capacity only.

18.     The U.S. Department of Homeland Security (DHS) is an agency of the United States Government and is partially responsible for implementing the mask mandate.

19.     Alejandro Mayorkas is Secretary of DHS, and is sued in his official capacity only.

20.     The Transportation Security Administration (TSA) is an agency of the United States Government, and the component of DHS principally responsible for implementing the mask mandate EO for that Department.

21.     David P. Pekoske is the Administrator of the TSA, and is sued in his official capacity only.

22.     The United States of America refers to the Departments and agencies of the United States Government in its Executive Branch.  It includes here all other federal agencies and officers named in Executive Order 13998 or implicated in its implementation, including, but not limited to, the Secretary of Labor, the Federal Transit Administration, and the COVID-19 Response Coordinator.  All such officials are sued in their official capacities only.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the laws of the United States, and 28 U.S.C. § 1346(a)(2) because Plaintiffs sue the United States, its agencies and officers, for violating an Act of Congress.  Plaintiffs have a cause of action pursuant to 5 U.S.C. §§ 702 and 706 because the Plaintiffs are aggrieved by the Mask Mandate complained of herein, a mandate comprised of final agency actions as defined by 5 U.S.C. § 704, regarding which there is no other adequate remedy in court, and for which Plaintiffs seek judicial review.

24.     Plaintiffs' claims for declaratory and injunctive relief seek remedies under 28 U.S.C. §§ 2201–02.

25.     Venue is appropriate in this judicial district and division under 5 U.S.C. § 703, under 28 U.S.C. § 1391(e)(1)(B) because the Defendants are agencies of the United States or officers thereof acting their official capacities and a substantial part of the events complained of herein occurred in this district and division, as well as

under 28 U.S.C. § 1391(e)(1)(C) because two of the Plaintiffs reside in this district and division.

## FACTUAL ALLEGATIONS

26.     On January 21, 2021, President Biden issued Executive Order 13998, ordering the agencies named as co-defendants here to issue renewed Mask Mandates on commercial airlines and in airports.  Exec. Order 13998, *Promoting COVID-19 Safety in Domestic and International Travel*, 86 Fed. Reg. 7205 (Jan. 26, 2021).  The EO directs HHS (including CDC), DOT (including FAA), DHS (including TSA), and other agencies to mandate wearing masks in, *inter alia*, airports and commercial aircraft.  *Id.* § 2(a).

27.     On January 27, 2021, Acting Secretary of Homeland Security David P. Pekoske—who is now the TSA Administrator—determined that a national emergency existed regarded COVID-19, and that consequently masks must be mandated in various forms of public transportation, including commercial aircraft and airports. *Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System*, 86 Fed. Reg. 8217 (Feb. 4, 2021).  The Acting Secretary invoked his statutory authorities under 49 U.S.C. §§ 106(m) and 114(f), (g), (l), and (m) to direct TSA to implement the EO.  *Id.* at 8218–19.

28.     On January 29, 2021, CDC issued a Notice and Order, *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021) ("CDC Order").  CDC invoked its authority under 42 U.S.C.

§ 264(a) and 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b), requiring the wearing of masks on airplanes and in airports.  *Id.* at 8026, 8029.

29.     The CDC Order invokes 42 U.S.C. § 264(a) as its statutory authority. That provision empowers CDC—in the place of the Surgeon General, with the approval of the Secretary of HHS—to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases …." *Id.*

30.     The CDC Order explains that it shall be interpreted and implemented "to achieve the following objectives:  Preservation of human life; Maintaining a safe and secure operating transportation system; Mitigating the further introduction, transmission, and spread of COVID-19 …; and Supporting response efforts to COVID-19 at the Federal, state, local, territorial, and tribal levels."  86 Fed. Reg. at 8027.

31.     The CDC Order includes exemptions.  It specifies that it does not apply during certain events, such as while a person is eating or drinking, when a person speaking with someone who is hearing-impaired, or when an authorized person is seeking to confirm one's identity during a photo identification check.  *Id.*  It also exempts certain categories of person, such as children under the age of two.  *Id.*

32.     The CDC Order continues, "Masks help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others." *Id.* at 8028.  It also asserts, "Appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19."  *Id.* at 8028.  Consequently, CDC

claims "that the mask-wearing requirements in this Order are reasonably necessary to prevent the further introduction, transmission, or spread of COVID-19." *Id.* at 8029.

33.     The CDC Order does not include consideration of individuals who have previously contracted COVID-19, which generates antibodies that confer "natural immunity." It does not discuss how much less risk such individuals are from COVID-19, or explain why such individuals need to wear a mask to stop the spread of COVID-19.

34.     The CDC Order cites to various sources assuring readers that wearing masks slows the spread of COVID-19, but does not provide scientific evidence demonstrating these supposed benefits.

35.     The CDC Order remains in effect until further action by the Secretary of HHS. *Id.* at 8026.

36.     The TSA issues Security Directives for airplanes and airports, as authorized by 49 U.S.C. §§ 114 and 44903, and issued in accordance with the provisions of 49 C.F.R. § 1542.303, and Emergency Amendments authorized by 49 U.S.C. §§ 114 and 44902, and issued in accordance with the provisions of 49 C.F.R. § 1546.105(d).

37.     The latest TSA mask mandate prior to the extension at issue here is SD 1542-21-01C and EA 1546-21-01C, which was set to expire March 18, 2022. But TSA announced it was extending this requirement through April 18, 2022, with no assurance that the mandate will expire at that time. *Statement regarding face mask*

*use on public transportation*, TSA (Mar. 10, 2022), https://www.tsa.gov/news/press/statements/2022/03/10/statement-regarding-face-mask-use-public-transportation. TSA explained, "During that time, CDC will work with government agencies to help inform a revised policy framework for when, and under what circumstances, masks should be required in the public transportation corridor. This revised framework will be based on the COVID-19 community levels, risks of new variants, national data, and the latest science." *Id.* The mandate now in effect is presumptively codified as SD 1542-21-01D and EA 1546-21-01D. The TSA's mandate covers airport operators, aircraft crewmembers, and aircraft passengers.

38. DOT has mirrored this language from TSA, announcing, "During this time, [CDC] will work with [DOT] regarding when and under what circumstances masks should be required for public transportation in the future. Any changes will be based on the COVID-19 community levels, risks of new variants, national data, and the latest science." *Federal Mask Requirement for Transit*, FED. TRANSIT ADMIN., https://www.transit.dot.gov/TransitMaskUp. DOT has incorporated CDC's masking determinations into the Federal Transit Administration's Master Agreement. *See* Fed. Transit Admin., Dep't of Transp., FTA MA(28) § 49 (Feb. 9, 2021), https://www.transit.dot.gov/sites/fta.dot.gov/files/2021-02/FTA-Master-Agreement-v28-2021-02-09.pdf.

39. As a component agency of DOT, FAA likewise continues to enforce a mask mandate both in airports and on airplanes. *See FAA Statement on Wearing*

10

*Masks    in    Airports    and    On    Planes*, FAA   (May    14,    2021),

https://www.faa.gov/newsroom/faa-statement-wearing-masks-airports-and-planes.

40.    Dallas Fort Worth International Airport ("DFW") is located in the City

of Fort Worth, which is in Tarrant County, in the State of Texas.

41.    Representative Krause resides in Haslet, which is in Tarrant County,

Texas.  As a resident of Tarrant County, he generally travels through DFW Airport.

42.    The Mask Mandate requires Representative Krause to wear a mask on

commercial aircraft.

43.    Ever  since  Defendants  imposed  the  Mask  Mandate,  each  time

Representative Krause has flown on a commercial airplane, he was required to wear

a face mask on each one.

44.    But for the Mask Mandate, Representative Krause would not wear a

mask when flying on an airplane.

45.    Representative Krause is currently booked for flights through DFW on

April 13, April 14, and April 16 of 2022, and plans to also travel by air through DFW

in June 2022 and later in the year.

46.    Mr. Anthony ("Tony") Perkins is President of both the Family Research

Council as its political action affiliate, FRC Action (both described below).  As such,

he travels extensively across the United States.

47.    The Mask Mandate requires Mr. Perkins to wear a mask on commercial

aircraft.

48.     Mr. Perkins has flown on numerous flights on commercial airplanes since Defendants imposed the Mask Mandate, and was required to wear a face mask on each one.

49.     But for the Mask Mandate, Mr. Perkins would not wear a mask when flying on an airplane.

50.     Mr. Perkins is scheduled to travel by air during April 2022, and subsequent months in 2022, including flights through DFW.

51.     S.P. is the minor son of Mr. Perkins.  S.P. sometimes travels with his father.  When he has travelled by commercial air in 2022, S.P. has worn a mask as required on each flight.

52.     The Mask Mandate requires S.P. to wear a mask on commercial aircraft because, although he is a minor, he is over the age of two.

53.     But for the Mask Mandate, S.P. would not wear a mask when flying on an airplane.

54.     S.P. is currently scheduled to be on flights in April prior to April 18.

55.     Donna Bramson is a member of FRC Action, is scheduled to fly on commercial airplanes on April 6, April 12, and April 14, 2022, and plans to travel on additional flights during 2022.

56.     The Mask Mandate requires Mrs. Bramson to wear a mask on commercial aircraft.

57.     But for the Mask Mandate, Mrs. Bramson would not wear a mask when flying on an airplane.

12

58.    The Family Research Council (FRC) is a nonpartisan, nonprofit 501(c)(3) organization incorporated in Washington, D.C., where its corporate offices are located.  FRC's mission is to advance faith, family, and freedom in public policy and the culture from a biblical worldview.  As part of that mission, FRC opposes government overreach and illegal government mandates such as the Mask Mandate. As relevant here, J. Kenneth Blackwell is FRC's Senior Fellow for Human Rights and Constitutional Governance, and his portfolio includes opposing the Mask Mandate as an illegal overreach by the Federal Government.

59.    FRC Action is the political action affiliate of FRC, organized under 501(c)(4) of the Internal Revenue Code.  FRC Action advocates for legislation and regulations that advance the mission of FRC, including opposition to the Mask Mandate.  As of March 21, 2022, FRC Action currently has 26,163 members.  This includes 1,493 members in the State of Texas.  Representative Krause and Mrs. Bramson are two such members of FRC Action who reside in the Fort Worth Division of the Northern District of Texas.

60.    Many FRC Action members travel on commercial airplanes, and there is no reason to doubt whether they comply with the Mask Mandate.  Representative Krause and Mrs. Bramson are two such members who act in accordance with the Mask Mandate.

61.    But for the Mask Mandate, many FRC Action members would not wear a mask when flying on an airplane.  Representative Krause and Mrs. Bramson are two such members.

62.     As researchers have now had ample opportunity to test the effectiveness of wearing masks as part of combating the spread of COVID-19, studies show that masks are actually ineffective, particularly the cloth masks and surgical masks commonly worn.  Sam Raskin, *Study finds N95 masks more effective than surgical, cloth coverings against COVID-19*, N.Y. POST (Aug. 22, 2021) (discussing study), https://nypost.com/2021/08/22/study-finds-n95-masks-more-effective-than-surgical-cloth-masks/.  Given that wearing cloth or surgical masks satisfy the Mask Mandate, it is not effective at stopping COVID-19 in airports or on airplanes.

63.     The Mask Mandate is harmful to children.  Forcing children to wear masks comes with a variety of health risks: skin issues, carbon dioxide in the blood, anxiety and depression, which outweighs the mild benefits for children. *See* Marty Makary & H. Cody Meissner, *The Case Against Masks for Children*, WALL ST. J. (Aug. 8, 2021), https://www.wsj.com/articles/masks-children-parenting-schools-mandates-covid-19-coronavirus-pandemic-biden-administration-cdc-11628432716.

64.     Some of the data regarding children does not specify whether the harm to children is specifically due to the wearing of masks, but is relevant to assessing the potential impact of the Mask Mandate.

65.     For example, comparing Virginia school students in middle and high school in the 2019–2020 school year versus the 2020–2021 school year, low-performing students saw "an explosion of C's, D's, and F's," with the number "earning F's in at least two classes jumped by 83 percent" in the fall 2020 semester.  Hannah

Natanson, *Failing grades spike in Virginia's largest school system as online earning gap emerges nationwide*, WASH. POST (Nov. 24, 2020).

66.     These harms appear more pronounced the younger the children are.  In the analysis referenced above, the "percentage of middle-schoolers receiving at least two F's quadrupled, while the percentage of high-schoolers scoring at least two F's increased by 50 percent." *Id.*

67.     Planes are a very low-risk environment for contracting or spreading COVID-19.  According to a survey of epidemiologists, planes are safer than bars, theaters, gyms, and restaurants.  *See Full Results: COVID-19 Survey of Epidemiologists on Reopening Risks and Data Quality*, CIVIC METER (2020), https://civicmeter.com/full-results-covid-19-survey-of-epidemiologists-on-reopening-risks-and-data-quality/.  As a consequence, regarding COVID-19, an airplane is "one of the most secure conditions you can be in." Sophie Bushwick, et al., *Evaluating COVID Risk on Planes, Trains and Automobiles*, SCI. AM. (Nov. 19, 2020), https://www.scientificamerican.com/article/evaluating-covid-risk-on-planes-trains-and-automobiles2/ (quoting Sebastian Hoehl from the Institute for Medical Virology at Goethe University).

**COUNT I**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**Arbitrary and Capricious**

68.     Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

69.     A district court must "hold unlawful and set aside agency action" that is "arbitrary and capricious."  5 U.S.C. § 706(2)(A).  An agency action is arbitrary and

capricious if it does not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).   The APA "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

70.   A court must "not defer to the agency's conclusory or unsupported suppositions." *Texas v. Biden*, 10 F.4th 538, 555 (5th Cir. 2021) (citing *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010)).   The court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State Farm*, 463 U.S. at 43. Such an error is one where the agency "entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Id.*

71.   Defendants did not consider natural immunity when they imposed the Mask Mandate in 2021.   Nor have these ongoing agency actions been updated to include any discussion of the emerging medical science regarding children's lower risk from COVID-19, and heightened risks from wearing masks, both of which together should have led to consideration of at minimum increasing age exemption range of the Mask Mandate.   Defendants likewise failed to consider the U.S. Government's own DARPA study regarding the miniscule risk of contracting COVID-

19 on a commercial aircraft. These facts alone should result in a holding of arbitrary and capricious.

72.     But neither did Defendants publish any such consideration or rationale of the latest data and the growing understanding of these facts when Defendants extended the Mask Mandate after March 18, 2022. That extension was therefore arbitrary and capricious.

73.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

a.     Declare that the agency actions implementing the Mask Mandate imposed by Executive Order 13998 are arbitrary and capricious;

b.     Declare that the agency actions extending the Mask Mandate imposed by Executive Order 13998 beyond March 18, 2022, are arbitrary and capricious;

c.     Hold unlawful and set aside those agency actions;

d.     Preliminarily and permanently enjoin actions by the Defendants resulting from Executive Order 13998;

e.     Award Plaintiffs the costs of this suit and reasonable attorneys' fees; and

f.     Grant any other relief that the Court deems just, proper, and equitable.

March 23, 2022

Respectfully submitted,


/s/ Kenneth A. Klukowski
Mark R. Paoletta*
D.C. Bar No. 422746
Kenneth A. Klukowski
D.C. Bar No. 1046093
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

*Pro hac vice application forthcoming

Counsel for Plaintiffs