**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*, <br><br>      *Plaintiffs,* <br><br>      v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br>      *Defendants*. | Civil Action No.: <br> 4:22-cv-00209-O |

**PLAINTIFFS' SUPPLEMENTAL BRIEF SUPPORTING INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.      This Court is still able to grant Plaintiffs immediate injunctive relief and should
        do so.   ........................................................................................................................ 1

        A.      Injunctions from other districts do not impair this Court's ability to grant
                injunctive relief. .................................................................................................... 1

                1.      Controlling precedent leaves the matter to this Court's discretion. ............ 1

                2.      The Ninth and Eleventh Circuits expressly authorize relief here. .............. 2

        B.      Plaintiffs continue to have standing. ..................................................................... 5

                1.      Plaintiffs have injuries conferring standing, including associational
                        standing. ...................................................................................................... 5

                2.      The case is not moot. ................................................................................. 11

                3.      Defendant CDC's actions are imposing collateral consequences on
                        Plaintiffs. ................................................................................................... 14

        C.      Plaintiffs therefore still face irreparable harm requiring nationwide relief. ......... 17

II.     The parties appear to generally agree on the remaining two issues.................................. 18

CONCLUSION .............................................................................................................. 19

CERTIFICATE OF SERVICE ...................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *abrogated on others grounds,*
  *Califano v. Sanders*, 430 U.S. 99 (1977) ................................................................. 1

*Adarand Contractors, Inc. v. Slater*, 528 U.S. 216 (1995) ........................................ 11

*Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*,
  618 F. App'x 781 (5th Cir. 2015) ............................................................................. 15

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. Barnum & Bailey*
  *Circus*, 317 F.3d 334 (D.C. Cir. 2003) ..................................................................... 7

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) .................................................................................... 6

*Brenham Cmty. Protective Ass'n v. U.S. Dep't, Agr.*,
  893 F. Supp. 665 (W.D. Tex. 1995) .......................................................................... 9

*BST Holdings v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ................................................ 17

*Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685 (D.C. Cir. 1996) ........... 13

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................... 4

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ........................................................ 3

*California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019),
  *judgment vacated on other grounds by Little Sisters of the Poor Saints Peter & Paul*
  *Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) ................................................... 2, 3

*Carroll v. Princess Anne*, 393 U.S. 175 (1968) ......................................................... 12

*Chafin v. Chafin*, 568 U.S. 165 (2013) ....................................................................... 11

*City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) ................................................ 17

*Ctr for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152 (D.C. Cir. 2005) ................... 6

*Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*,
  937 F.3d 533 (5th Cir. 2019) .................................................................................... 8

*Cty. of Los Angeles v. Davis*, 440 U.S. 625 (1979) .................................................... 12

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998) ...................................... 15

*Davis v. FEC*, 554 U.S. 724 (2008) ...................................................................... 9, 12

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ........... 17

*Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761 (N.D. Tex. 2012) ................ 10

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ............................................................ 7

*Evitts v. Lucey*, 469 U.S. 387 (1985) ...................................................................................... 14

*Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021).......................... 3, 4, 5

*Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982) ............................................................ 13

*Gulf Restoration Network v. Salazar*, 683 F.3d 158 (5th Cir. 2012) ............................................ 13

*Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306 (5th Cir. 1999)................................ 2

*Health Freedom Defense Fund, Inc. v. Biden*, No. 8:21-cv-1693-KKM-AEP,
    2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), *appeal docketed*,
    No. 22-11287 (11th Cir. Apr. 21, 2022) ...................................................................... 18

*Honig v. Doe*, 484 U.S. 305 (1988) .......................................................................................... 12

*Hunt v. Wash St. Apple Adver. Comm'n*, 432 U.S. 333 (1977) .................................................. 5

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir. 2017),
    *vacated on other grounds and dismissed as moot*, 138 S. Ct. 353 (2018)................................ 17

*Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012)..................................... 11, 12

*La. Env't Action Network v. LWC Mgmt. Co.*, No. CIV. A. 07-0595,
    2008 WL 3343006 (W.D. La. Aug. 11, 2008) ................................................................ 8

*Ladd v. Livingston*, 777 F.3d 286 (5th Cir. 2015)...................................................................... 17

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) .............................................................. 5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................ 8

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ............................................................................ 7

*Montague v. Meese*, 683 F. Supp. 589 (N.D. Tex. 1988) ............................................................ 9

*Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017),
    *overruled on other grounds by Planned Parenthood of Greater Texas Fam.*
    *Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020) .............. 9

*Pollard v. United States*, 352 U.S. 354 (1957) .......................................................................... 14

*Regents of Univ. of California v. Shalala*, 82 F.3d 291 (9th Cir. 1996) ........................................ 9

*Ryan v. Gonzales*, 568 U.S. 57 (2013)...................................................................................... 1

*S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911)...................................................................... 13

*Sibron v. New York*, 392 U.S. 40 (1968).................................................................................. 14

*Sierra Club v. Salazar*, 894 F. Supp. 2d 97 (D.D.C. 2012),
  *rev'd and remanded on other grounds, Sierra Club v. Jewell*,
  764 F.3d 1 (D.C. Cir. 2014) ............................................................................... 7

*Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545 (5th Cir. 1993) ...................... 10

*Super Tire Eng'ring Co. v. McCorkle*, 416 U.S. 115 (1974) ........................................ 14

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) .................................................... 17

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ..................................................................... 17

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018) ............................................ 2

*Villas at Parkside v. City of Farmers Branch*, 701 F. Supp. 2d 835 (N.D. Tex. 2010) ........ 9

*Vitek v. Jones*, 445 U.S. 480 (1980) ............................................................................... 11

*Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*,
  16 F.4th 1130 (5th Cir. 2021) ........................................................................... 9

*Wis. Dep't of Indus. v. Gould Inc.*, 475 U.S. 282 (1986) ............................................... 13

**Statutes**

5 U.S.C. § 702 ................................................................................................................. 8

5 U.S.C. § 706(2)(A) ................................................................................................... 7, 11

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 5

**Other Authorities**

*Are Masks Still Required on Chicago Public Transporation and at Airports?*
  *Here's What We Know*, NBC CHICAGO (Apr. 19, 2022) ...................................... 15

*Coronavirus Updates*, PORT AUTH. N.Y. & N.J. (Apr. 19, 2022) ................................. 15

*Masks Required at LAX, But Not on Planes. Confused? Read On!*,
  MYNEWSLA (Apr. 21, 2022) ............................................................................ 16

Amy Nelson, *Milwaukee parents blast school district's flip-flop on mask mandates:*
  *'It's unfair to our kids,'* FOX NEWS (Apr. 21, 2022) .......................................... 10

Travis Schlepp, *Do you still have to wear a mask at LAX?*, KTLA (Apr. 18, 2022) ................. 16

Lorraine Taylor, *Los Angeles County once again requiring masks on all public transit*,
  FOX NEWS (Apr. 22, 2022) ............................................................................... 16

Plaintiffs respectfully submit this Supplemental Brief Supporting Injunctive Relief asking for swift action for either a preliminary injunction order or a temporary restraining order.[1]

I.    **THIS COURT IS STILL ABLE TO GRANT PLAINTIFFS IMMEDIATE INJUNCTIVE RELIEF, AND SHOULD DO SO.**

The fact that the Middle District of Florida has vacated the CDC Order at issue in this litigation does not impair the ability of this Court to order whatever injunctive relief this Court was otherwise inclined to grant.

   A.    **Injunctions from other districts do not impair this Court's ability to grant injunctive relief.**

Plaintiffs have not identified controlling precedent from the Supreme Court, Fifth Circuit, or Northern District of Texas that directly answers this Court's question of whether this Court currently has the ability to issue a preliminary injunction or a temporary restraining order. However, controlling precedent sets forth principles that should inform this Court's decision, all of which counsel in favor of affirming this Court's authority to issue immediate relief. Moreover, the Ninth and Eleventh Circuits both answer this Court's question in the affirmative, and Plaintiffs urge this Court to adopt that recently reaffirmed rule of decision in this case, and to exercise its discretion to issue its own injunction here.

      1.    **Controlling precedent leaves the matter to this Court's discretion.**

District courts are vested with broad discretion on how to respond to developments in other district courts considering the same or similar issues. A district court may in its discretion dismiss a declaratory judgment or injunctive suit "if the same issue is pending in litigation elsewhere." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on others grounds, Califano v.*

---

[1] Plaintiffs still seek injunctive relief as soon as possible, and motions for a preliminary injunction and a temporary restraining order are fully briefed before this Court. If this Court chooses to grant a preliminary injunction, which Plaintiffs at this point believes the better course, then of course the request for a TRO would become moot.

*Sanders*, 430 U.S. 99 (1977).  Similarly, whether to stay a case is generally left to the discretion of the district court.  *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013).  "But while a district court *may*" do so, "it is not *required* to do so."  *Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 319 (5th Cir. 1999).  It is squarely within the discretion of this Court as to whether to move forward to rule on our pending motion for injunctive relief.

### 2.    The Ninth and Eleventh Circuits expressly authorize relief here.

Two other circuits have clearly held in recent cases that when a nationwide federal policy is being challenged under the Administrative Procedure Act and one court has granted injunctive relief with nationwide reach, other district courts are still able to issue injunctions on the cases before them.  Both circuits apply the exception to general principles of mootness of matters capable of repetition yet evading review, which is also discussed in greater detail below in Part I.B.2. Under that two-pronged exception, a case is not moot "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018).

In one relevant case, *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019), *judgment vacated on other grounds by Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), the Ninth Circuit reviewed a district court's injunction.  941 F.3d at 420.  But during the intervening period an out-of-circuit district court had issued a nationwide jurisdiction, so the Ninth Circuit needed to determine whether this other injunction mooted the case under review.  *Id.* at 421–22.  The appeals court held that the first prong of the capable-of-repetition exception test was satisfied because of the short time window between the two courts' taking their respective actions.  *Id.* at 423.  The Ninth Circuit then held that the second prong was satisfied because a preliminary injunction can expire and leave the plaintiffs

without relief if it is not later converted into a permanent injunction.  *See id.*  The fact that the preliminary injunction might never leave the plaintiffs subject again to the complained-of injury, because plaintiffs' continued success in litigation would result in a permanent injunction, did not remove the case from the exception, because that "mere possibility does not … undermine [the court's] conclusion that, given the many other possible outcomes in the [out-of-circuit] case, there remains a 'reasonable expectation' that the federal defendants will be subjected to the injunction in this case."  *Id.*  The Ninth Circuit elaborated that a "reasonable expectation does not demand certainty."  *Id.*  The Ninth Circuit added that the Supreme Court has declared the Justices' "interest in allowing the law to develop across multiple circuits," *id.*, which would be frustrated if one court's injunction could deprive another court of jurisdiction to adjudicate the same issue.  That appeal elaborated on the reasoning of a prior case in which the Ninth Circuit emphasized the importance of developing legal issues by having "multiple decisions by the various courts of appeals."  *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018).

In the second case, *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021), the Eleventh Circuit reviewed another APA challenge to another federal COVID-19 mandate in which one federal district court had granted a nationwide preliminary injunction and the second court had to determine whether it could grant its own injunction while the first court's injunction was still in effect.  *Id.* at 1277–79.  The Eleventh Circuit noted that the other court's granting a nationwide injunction "appeared, as a practical matter, to moot the pending" litigation because a second injunction "could accomplish nothing more."  *Id.* at 1280.  The Eleventh Circuit held that the first prong of the exception was satisfied because the nationwide preliminary injunction would not be a long-term disposition of the case, since a preliminary injunction lasts only until a district court arrives at a final judgment.  *See id.* 1281.

3

The Eleventh Circuit joined the Ninth Circuit in recognizing the need to effectuate the Supreme Court's interest in allowing legal issues to develop concurrently in the lower courts. "When, as here, a regulatory challenge involves important and difficult questions of law, it is especially vital that various courts be allowed to weigh in so that the issues can percolate among the courts." *Id.* at 1283.  The Eleventh Circuit held that such a case satisfies the exception to general principles of mootness because it is capable of repetition yet evading review.  *Id.*

Those principles apply here.  A permanent injunction that is being appealed is no less temporary than a preliminary injunction.  Just as the latter will either be converted into a permanent injunction or be dissolved, so too the former will either continue upon affirmance or will be dissolved upon reversal or vacatur.  Indeed, the Eleventh Circuit added that a second manner in which that court regarded its case as satisfying the capable-of-repetition exception is the "short timeframe" between the issuance of any injunction from the district court and final appellate judgment in a circuit court.  *Id.* at 1284.  That is precisely the situation here.  The fact that one case involved a preliminary injunction and the other case involved a permanent injunction is immaterial to that temporal analysis.

It is important to allow the legality of the Mask Mandate to percolate.  The Supreme Court has stated that "foreclosing adjudication by a number of different courts and judges" would have a "detrimental effect" on the Justices' ability to ultimately resolve legal issues in the optimal fashion. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  The Eleventh Circuit elaborated on that principle, explaining that "when a case raises a novel and important issue, allowing multiple federal appellate courts to express their views on the issue adds value.  Indeed, the Supreme Court has recognized that "the ultimate resolution of such issues benefits from litigation in multiple cases because various circuit courts may effectively debate one another over the proper outcome."

*Florida*, 19 F.4th at 1285.  The Eleventh Circuit in that case therefore held that the other court's grant of an injunction did not bar the second court from deciding whether to grant its own injunction.  *Id.* at 1286.  Likewise here, the Fifth Circuit cannot weigh in on this important matter to debate the Eleventh Circuit over the Mask Mandate unless this Court first grants or denies an injunction concerning the Mask Mandate so this case can go to the Fifth Circuit.

### B.   Plaintiffs continue to have standing.

"To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable court judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  Plaintiffs continue to have standing in this suit, as they had both associational and individual standing at the outset of the litigation, which continues at this time as the case is not moot.[2]  Plaintiffs pleaded sufficient facts to establish standing in the complaint, and that standing continues because the case has not become moot.

### 1.   Plaintiffs have injuries conferring standing, including associational standing.

Plaintiff FRC Action has associational standing to bring this suit in its own name and on behalf of its approximately 26,000 members.  Supp. Aff. of Perkins ¶ 24, Supp. Br. Appendix 37 (App.).  At latest count, this included 1,493 members in Texas, and, as relevant for reasons discussed below, FRC Action also has 834 members in New York, and 2,450 in California.

A nonprofit organization has standing to assert the rights of its members when (1) its members would have standing to sue individually, (2) the subject-matter of the litigation is

---

[2] Plaintiffs intended to present these arguments if Defendants filed a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(1).  Defendants still have not done so, nor is their 60-day deadline for doing so imminent.  However, issues of standing and mootness are relevant to answering this Court's supplemental briefing order, so Plaintiffs offer this jurisdictional material now.

germane to the organization's mission, and (3) the participation of individual members is not necessary. *Hunt v. Wash St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Those elements are easily met here. First, many individual members would have standing to sue. *See, e.g.*, App. 24, 27, 30. The mission of FRC Action includes opposing unlawful government mandates, App. 35, and advocating the rights of parents to make decisions of this sort for their children, App. 36. Second, the germaneness test is "undemanding" and requires "mere pertinence" between the organization's mission and the litigation. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010). And third, even though individual members need not be parties, two co-plaintiffs were identified the in the Complaint and attached affidavits are FRC Action members. App. 15, 17.

From the outset, Plaintiffs made clear that they did not want to wear masks. *See* App. 15, 18, 21. Plaintiffs' briefing made clear that in addition to not wanting to wear masks, Plaintiffs also claimed as an injury not wanting to purchase or otherwise obtain them. *See* ECF No. 15 at 21. In this supplemental brief, Plaintiffs elaborate on those assertions to explain that they find wearing masks physically irritating, burdensome, uncomfortable, that wearing masks on airplanes and in airports interferes with their enjoyment of air travel, that they object to obtaining, carrying, and maintaining masks, and that they are concerned about health risks associated with wearing masks. App. 24, 27, 30, 32–33, 36. Those are injuries this Court can remedy.

Moreover, in this case Plaintiffs are asserting procedural-rights violations, standing requirements are more relaxed regarding aspects of the standing inquiry. "Where plaintiffs allege injury resulting from violation of a procedural right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax—while not wholly eliminating—the

issues of imminence and redressability, but not the issues of injury in fact or causation." *Ctr for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005).

This is seen in the APA context. "One of the basic procedural requirements of administrative [actions] is that an agency must give adequate reasons for its decisions," and "where an agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing 5 U.S.C. § 706(2)(A)). Previously, when discussing another statute with an arbitrary-and-capricious provision identical to the APA's, the Supreme Court referenced the "procedural right to challenge the [agency action] as arbitrary and capricious." *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). Other courts have likewise held that an agency violates procedural rights when it acts in a manner that is arbitrary and capricious in violation of statutory requirements. *See, e.g.*, *Sierra Club v. Salazar*, 894 F. Supp. 2d 97, 109 (D.D.C. 2012), *rev'd and remanded on other grounds*, *Sierra Club v. Jewell*, 764 F.3d 1 (D.C. Cir. 2014).

But whether procedural or otherwise, Plaintiffs are enduring cognizable injuries inflicted by the Mask Mandate. An "injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment" of what they are experiencing, including activites "which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions." *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003). A plaintiff need not always need to even see the infringement itself; it is enough that the plaintiff can "detect the effects, even if he does not directly observe" the injury. *Id.*

The Mask Mandate interferes with Plaintiffs' enjoyment of air travel. App. 32, 37. And FRC Action represents many more such members. App. 36. Many children of members are

similarly injured in this manner by the Mask Mandate.  App. 33, 37.  FRC Action seeks to vindicate those rights as well.

This explanation should lay to rest Defendants' previous questions regarding standing. Plaintiffs are aggrieved by the agency action here, and have statutory standing under 5 U.S.C. § 702.  And their injuries, explained in more detail below, are within the zone of interests to be protected by the APA's constraints on CDC decisionmaking.  *See Bennett v. Spear*, 520 U.S. 154, 163–65 (1997).

In addition to the unwelcome physical contact and interaction associated with wearing masks, those masks also make it unpleasant to engage in air travel.  That interference with enjoying air travel is a separate injurious impact from the Mask Mandate which Plaintiffs seek to remedy in this suit.  The Supreme Court and courts in the Fifth Circuit have repeatedly recognized such injuries.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992) (holding that injury to ability to observe and enjoy nature "is undeniably a cognizable interest for purpose of standing"); *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 537 (5th Cir. 2019) (recognizing that "an individual's aesthetic, recreational, and scientific interests" can form the basis for injury where there is actual or imment harm to that interest); *La. Env't Action Network v. LWC Mgmt. Co.*, No. CIV. A. 07-0595, 2008 WL 3343006, at *6 (W.D. La. Aug. 11, 2008) (finding injury-in-fact based on adverse impact to "their community, and/or their enjoyment obtained from being outside").

Also explained in previous filings, Plaintiffs continue to object to the compliance costs—both money and effort—imposed by the Mask Mandate, as they must either purchase or obtain masks, and maintain them for ready use.  App. 24, 27, 30, 32, 36.  These costs of compliance, even if not individually large, are sufficient to constitute an injury.  Moreover, for FRC Action's 26,000

members, those are the aggregated costs and efforts of all those members as they engage in air travel.  As noted in previous filings, the Fifth Circuit recently reaffirmed that plaintiff suffered irreparable harm from costs of compliance with an agency regulation because plaintiff could not recover any costs due to sovereign immunity, which is the case with an APA challenge like this. *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021).  Defendants provide no authority that the relatively low costs of individual masks prevents these irrecoverable costs from being regarded as injuries.

Finally, the possibility of physical and mental harms resulting from the wearing of masks, discussed in previous filings, *see* ECF No. 15 at 12–14, is also a cognizable injury.  It is a "well-established principle that a threatened injury may be sufficient to establish standing." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 455 (5th Cir. 2017), *overruled on other grounds by Planned Parenthood of Greater Texas Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020).  This Court has squarely held that "standing can rest on threatened injury." *Montague v. Meese*, 683 F. Supp. 589, 591 (N.D. Tex. 1988).  "'The injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is 'real, immediate, and direct.'" *Villas at Parkside v. City of Farmers Branch*, 701 F. Supp. 2d 835, 845 (N.D. Tex. 2010) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Other jurisdictions agree.  The Ninth Circuit has held that "potential injury may be sufficient to confer standing." *Regents of Univ. of California v. Shalala*, 82 F.3d 291, 298 (9th Cir. 1996) (citation omitted).  And in this states, another district court has held that "[p]otential injury can suffice to establish standing, so long as those injuries are not too distant from the

9

minimum requirements of Article III." *Brenham Cmty. Protective Ass'n v. U.S. Dep't, Agr.*, 893 F. Supp. 665, 671 (W.D. Tex. 1995).

Relevant stories that track with Plaintiffs' claims here regarding children come to light regularly. Just yesterday in Milwaukee, the mask mandate on school children was lifted, then was reimposed that very same week. Television reports demonstrate the impact such requirements can have on children. "She just bawled at the kitchen table," parent Mo Schultz explained to host Brian Kilmeade about her daughter's reaction to being told she had to resume mask-wearing, "and it broke my heart." Amy Nelson, *Milwaukee parents blast school district's flip-flop on mask mandates: 'It's unfair to our kids,'* Fox News (Apr. 21, 2022), https://www.foxnews.com/media/milwaukee-schools-mask-mandate-parents-outraged (linking to video of the interview). Another parent said that his daughter "was just devastated," and that he kept her home from school. *Id.*

That is at least as meaningful as adults enjoying a view of a natural landscape, which the Supreme Court represents as a sufficient injury to satisfy Article III. Defendants' apparent confused regarding Plaintiffs' concerns about the negative consequences the Mask Mandae can impose on children, *see, e.g.*, ECF No. 24 at 20–22, may be resolved when one views videos such as these discussing children's reactions. But this Court need only take the factual allegations of Plaintiffs at face value, and compare them to what the Supreme Court has repeatedly held sufficient, to hold that Plaintiffs are claiming cognizable injuries to grant standing.

Plaintiffs have easily carried their evidentiary burden at this stage. Evidentiary standards are less formal when seeking a preliminary injunction, where affidavits are sufficient to establish facts, and even hearsay is admissible. *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 777 (N.D. Tex. 2012). Courts can even issue a preliminary injunction with no evidence at all for

facts that are undisputed.  *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993).

Therefore these affidavits regarding injuries are sufficient.  Plaintiffs do not want to wear masks and have explained the details of their objection in terms of physical intrusions, costs and logistics, and potential health risks.  Defendants do not dispute most of the ultimate factual assertions regarding harm.  Rather, then generally dispute the significance of those facts, the conclusions that can be drawn from those facts, and whether those facts meet the requirements of 5 U.S.C. § 706(2)(A).

### 2.      The case is not moot.

Having established standing, the next question is whether the case is moot.  A case "becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citations and internal quotation marks omitted).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012) (internal quotation marks and brackets omitted).  A case is not moot when "it is not 'absolutely clear' … that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Vitek v. Jones*, 445 U.S. 480, 487 (1980).  Moreover, "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party asserting mootness*." *Adarand Contractors, Inc. v. Slater*, 528 U.S. 216, 222 (1995) (per curiam) (alterations omitted).

Applying these principles, there are at least three bases for concluding that this case is not moot.  Two of them are the common exceptions to general principles of mootness, one of which provided the foundation for the Ninth and Eleventh Circuit concluding that one court's grant of a

nationwide injunction did not preclude other courts from proceeding with their own injunctions, as discussed above in Part I.A.

First is the exception for a defendant's "voluntary cessation" of the challenged conduct, which will moot a case only if "there is no reasonable expectation … that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). That is critically important here, because the Supreme Court held that voluntary cessation does not moot a case if the defendant could resume the conduct as soon as the case is dismissed. *Knox*, 567 U.S. at 307. The bar for determining whether a case has been mooted by the defendant's voluntary conduct is demanding: A case is moot only if subsequent events made it absolutely clear that the wrongful conduct is unlikely to recur.

It is important to keep in mind that the Supreme Court "generally [has] been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988). But that rationale does not apply here, because here the CDC has never voluntarily ceased; it continues to assert the policy that masks should be worn on airplanes and in airports, and is appealing a court decision to the contrary.

Under this exception, this case should not be considered moot. If voluntary cessation does not make a case moot, then *a fortiori* when a defendant does not voluntarily cease—and is appealing a court order that forced a pause—and would resume instantly if allowed, such a posture should certainly not be considered moot.

Second is the exception "for disputes capable of repetition, yet evading review." *Davis v. FEC*, 554 U.S. 724, 735 (2008), discussed by the Eleventh Circuit above in Part I.A. A case does

not need to recur in precisely the same factual setting to be "capable of repetition." *Carroll v. Princess Anne*, 393 U.S. 175, 179 (1968).  Additionally, this exception does not require that precisely the same action will recur.  *See Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688–89 (D.C. Cir. 1996).  The Supreme Court has held that orders lasting less than two years typically evade review, *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–16 (1911), and has even applied the exception to a three-year measure, *see Wis. Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 285 n.3 (1986).

The Supreme Court has held matters "capable of repetition" in situations involving criminal proceedings where, if a stay were granted, it would preserve a live controversy while appellate review was ongoing.  *See, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 602–03 (1982).  There is no practical difference between those situations and this, where the granting of an injunction is the practical equivalent of the granting of a stay to criminal proceedings.  Except here, it is an injunction instead of a stay that purportedly would mean that the case is no longer a live controversy.  If one satisfies the "capable of repetition" exception, so should the other.

As a final factor, the Fifth Circuit has previously denied that challenges to agency action are moot when "there is no written or signed order cancelling" the agency action.  *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 168 (5th Cir. 2012).  No such cancellation has happened here.

This case fits this exception.  As recounted in previous filings, the CDC Order is ongoing, and other agencies (such as TSA) review their implementation measures every few months—and most recently, every 15 days.  Mandates have been lifted, then reimposed.  CDC claims to be constantly reevaluating.  The Mask Mandate was almost lifted on March 18, then almost again on April 18, now we are to May 3.  These short increments, compounded by courts imposing injunctions which are already under appellate review and could be modified or stayed at any

moment, is a prime example of when this exception should apply.  The Ninth and Eleventh Circuits applied it under very similar circumstances as discussed in Part I.A, and this Court should hold it applies here.

### 3.     Defendant CDC's actions are imposing collateral consequences on Plaintiffs.

A final basis for holding this case is not moot is the collateral-consequences doctrine.  This week has showcased the collateral consequences of the Mask Mandate, and militate against a mootness holding here.

That doctrine is often applied in other contexts.  In the context of habeas cases, the Supreme Court has recognized that even the possibility of collateral consequences arising from the subject of the litigation is sufficient to keep a case from becoming moot.  *See, e.g.*, *Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985) (stating that the possibility of "collateral consequences" is sufficient to prevent mootness); *Sibron v. New York*, 392 U.S. 40, 55 (1968) ("There mere possibility [of collateral consequences] is enough to preserve a criminal case from ending ignominiously in the limbo of mootness.") (internal quotation marks omitted); *Pollard v. United States*, 352 U.S. 354, 358 (1957) ("The possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits.")

But the collateral-consequences doctrine has also been applied in the civil context.  The Supreme Court held that a case over a labor strike was not moot even after the strike ended, because reaching a final judgment in the case might impact future labor disputes.  *See Super Tire Eng'ring Co. v. McCorkle*, 416 U.S. 115, 124–25 (1974).  The Fifth Circuit has also applied this collateral-consequences doctrine in civil contexts very similar to this case.  One case that later became moot was an arbitrary-and-capricious challenge to a HUD regulation, in which the Fifth Circuit articulated as the test, "The question is whether there is a continuing collateral consequence that

provides the plaintiff with a 'concrete interest' in the case and for which 'effective relief' is available." *Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*, 618 F. App'x 781, 787 (5th Cir. 2015) (quoting *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998)).

These principles apply in this context as well. There are collateral consequences to the CDC's policy that FRC Action members are dealing with. Some examples from just this week:

News reports from New York City suggest that JFK International Airport and LaGuardia similarly are enforcing mask requirements. These requirements come from state health authorities. *See Coronavirus Updates*, PORT AUTH. N.Y. & N.J. (Apr. 19, 2022), https://www.panynj.gov/port-authority/en/alerts/coronavirus-updates.html. However, it repeatedly bases its provisions off CDC determinations, with language such as, "after careful review and consideration of CDC recommendations" and affirming their decision to follow CDC policy. *Id.*

Chicago reimposed a mask mandate after the Florida court's order, though it may since have been lifted. The Chicago Department of Aviation (CDA) issued a statement Tuesday saying, "The CDA will continue to follow, observe, and enforce all current and future guidance by federal, state and local health and security authorities." *Are Masks Still Required on Chicago Public Transporation and at Airports? Here's What We Know*, NBC CHICAGO (Apr. 19, 2022), https://www.nbcchicago.com/news/coronavirus/travel-mask-mandate-are-masks-still-required-on-chicago-public-transportation-and-at-airports-heres-what-we-know/2810106/. The news report then refers readers and viewers to the CDC for more information. *See id.* Subsequent news reports and social media postings suggest that the mask mandate has subsequently been lifted at the Chicago-area airports of O'Hare and Midway. But regardless of current requirements, visitors may be unsure, and requirements could presumably change again.

15

After telling travelers in the aftermath of Monday's court decision that they no longer needed to wear masks at Los Angeles International Airport (LAX), *see* Travis Schlepp, *Do you still have to wear a mask at LAX?*, KTLA (Apr. 18, 2022), https://ktla.com/news/local-news/do-you-still-have-to-wear-a-mask-at-lax/ ("So do travelers have to wear masks at LAX?  Short answer: no.), Los Angeles turned about-face and is now once again requiring travelers to wear masks in various forms of public transit, including airports, Lorraine Taylor, *Los Angeles County once again requiring masks on all public transit*, FOX NEWS (Apr. 22, 2022), https://www.foxnews.com/us/los-angeles-county-once-again-requiring-masks-on-all-public-transit.  "Health officials cited the [CDC's] claim that mask-wearing on public transit is essential to stopping the spread of COVID-19," the news report continued.

At minimum, confusion reigns regarding mask mandates at various airports nationwide due to the collateral consequences of the CDC not having rescinded its order or announced a change in policy.  Indeed, after trying to explain how masks are required at LAX when a traveler is in the terminal but not once that traveler boards the airplane parked at the terminal, one news report makes light in its title how confusing the situation is.  *See Masks Required at LAX, But Not on Planes.  Confused?  Read On!*, MYNEWSLA (Apr. 21, 2022), https://mynewsla.com/life/2022/04/21/la-county-reinstates-mask-mandate-aboard-public-transit-at-airports/.  That report, too, says the local masking mandate is being imposed to implement CDC policy.  *See id.*  Consequently, FRC Action members need to go to the trouble of attempting to ascertain the ever-changing requirements of various locations, and need to plan for the contingency of not knowing that a location requires masks, or that personnel at a non-requiring location might not be fully advised on the latest restrictions.  The prudent thing for an FRC Action member to do is to obtain masks and keep one ready.  These collateral consequences mean the case is not moot.

**C.       Plaintiffs therefore still face irreparable harm requiring nationwide relief.**

The impetus for the Court's supplemental briefing order apparently arises from the requirement that Plaintiffs must face the threat of irreparable harm to warrant a preliminary injunction. *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015). The foregoing discussion makes this point straightforward.

An injury is an irreparable harm simply if it cannot be undone by granting monetary damages. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Absent injunctive relief, Plaintiffs continue suffering the irreparable injuries caused by an unlawful federal overreach. *BST Holdings v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

A district court may issue a nationwide injunction in appropriate circumstances. *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015). The Fifth Circuit has already identified one such circumstance. *Id.* at 187–88 (importance of a uniform immigration system). Even Justices who are generally skeptical of that sort of remedy readily acknowledge that they are sometimes appropriate. *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 n.1 (2018) (Thomas, J., concurring). One such appropriate circumstance is where an injunction that is nationwide in scope is necessary to provide complete relief to plaintiffs. *City of Chi. v. Barr*, 961 F.3d 882, 916–17 (7th Cir. 2020). That is the case when plaintiffs are spread throughout "myriad jurisdictions" nationwide. *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017), *vacated on other grounds and dismissed as moot*, 138 S. Ct. 353 (2018).

\*   \*   \*

In summary, this Court has discretion to grant relief as if the Middle District of Florida had not acted on the case before it. That court's decision does not necessarily have any effect on the relief requested in this court.

A case is not moot unless it is impossible that this Court can grant any meaningful relief and Plaintiffs have no stake in the litigation.  But here it is possible that this Court can grant meaningful relief:  Granting an injunction would lead to percolation of this issue to make it fit for nationwide resolution, and granting an injunction could help resolve the ongoing confusion regarding masks my demonstrating to public policy officials a growing judicial concensus that the Mask Mandate is unlawful.  Plaintiffs therefore have an ongoing stake in the outcome of this litigation.  And all else aside, this case falls within exceptions to general principles of mootness.

This Court retains the full range of options for injunctive relief, and should exercise that discretion to grant Plaintiffs a preliminary injunction.

## II.   THE PARTIES APPEAR TO GENERALLY AGREE ON THE REMAINING TWO ISSUES.

Plaintiffs conferred with Defendants by phone on April 19, 2022, and have continued to communicate by email since then.  Based upon those conversations, Plaintiffs believe that all parties generally agree on the remaining two issues in this Court's supplemental briefing order.

Regarding the second issue, although Plaintiffs and Defendants might articulate their positions with different words, the parties seemed to agree that the single count in this lawsuit is substantively similar to one of the three counts in *Health Freedom Defense Fund, Inc. v. Biden*, No. 8:21-cv-1693-KKM-AEP, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), *appeal docketed*, No. 22-11287 (11th Cir. Apr. 21, 2022).  *See id.* at *3.  The Middle District of Florida held that the Mask Mandate is arbitrary and capricious, *see id.* at *18–20, and effectively enjoined it nationwide by vacating it, *id.* at *22.  Judge Mizelle's remedy of vacatur has the same practical effect as a nationwide injunction, which Plaintiffs are seeking here.

Regarding the third and final issue, the parties seemed to also agree that if the order from the Middle District of Florida were stayed, then this case would be in the same posture it was in

on April 17, 2022.  If the April 18 order were stayed, then all parties agree that this Court would be able to rule immediately in this case.  The Department of Justice has filed a notice of appeal in the Florida case.  The Department did not seek a stay from Judge Mizelle, and it remains to be seen whether the Department will seek a stay from the Eleventh Circuit once the case is properly docketed and ready for appellate filings in the usual court.  The Department did not inform Plaintiffs on whether it plans to seek such a stay.

Where the parties differ is that Defendants argue incorrectly that this case is not currently justiciable, while by contrast Plaintiffs have explained why this Court still has discretion to grant a preliminary injunction in this case, and indeed should do so as quickly as possible.

## CONCLUSION

Were the injunction from the Middle District of Florida, stayed, narrowed, or reversed, FRC Action's 26,000 members would be instantly unprotected, and given the size of that membership, multiple members would be forced to wear masks immediately.  But even without such a development, Plaintiffs continue to experience irreparable harm, including some FRC Action members still being forced to wear masks while engaging in air travel.  For these reasons and those explained its Plaintiffs' previous filings, this Court should therefore grant immediate injunctive relief.

April 22, 2022

Respectfully submitted,

*/s/ Kenneth A. Klukowski*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Kenneth A. Klukowski
D.C. Bar No. 1046093
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006

Tel: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

*Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 22, 2022, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, by using the Court's CM/ECF filing system. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski

*Attorney for Plaintiffs*