UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No.:<br>4:22-cv-00209-O |

**APPENDIX IN SUPPORT OF PLAINTIFFS'
SUPPLEMENTAL BRIEF IN SUPPORT OF INJUNCTIVE RELIEF**

Plaintiffs file this Appendix in Support of Plaintiffs' Supplemental Brief in Support of Injunctive Relief, and in support thereof, show the Court as follows:

**APPENDIX**

| EXHIBIT NO. | DESCRIPTION | APP. RANGE |
|---|---|---|
| 1 | Exec. Order 13998, *Promoting COVID-19 Safety in Domestic and International Travel*, 86 Fed. Reg. 7205 (Jan. 21, 2021) | 1 – 5 |
| 2 | Notice and Order, *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Jan. 29, 2021) | 6 – 12 |
| 3 | Affidavit of Donna Brunson Bramson, Mar. 22, 2022 | 13 – 15 |
| 4 | Affidavit of Matthew Haston Krause, Mar. 28, 2022 | 16 – 18 |
| 5 | Affidavit of Anthony Richard Perkins, Mar. 30, 2022 | 19 – 22 |
| 6 | Affidavit of Paul Kepes, Apr. 21, 2022 | 23 – 25 |
| 7 | Affidavit of John Kenneth Blackwell, Apr. 22, 2022 | 26 – 28 |
| 8 | Affidavit of William Gerald Boykin, Apr. 22, 2022 | 29 – 30 |
| 9 | Suppl. Affidavit of Matthew Haston Krause, Apr. 22, 2022 | 31 – 33 |
| 10 | Suppl. Affidavit of Anthony Richard Perkins, Apr. 22, 2022 | 34 – 37 |

April 22, 2022                                    Respectfully submitted,

                                                  */s/ Kenneth A. Klukowski*
                                                  Mark R. Paoletta*
                                                  D.C. Bar No. 422746
                                                  Kenneth A. Klukowski
                                                  D.C. Bar No. 1046093
                                                  SCHAERR | JAFFE LLP
                                                  1717 K Street NW, Suite 900
                                                  Washington, DC 20006
                                                  Tel: (202) 787-1060
                                                  Facsimile: (202) 776-0136
                                                  kklukowski@schaerr-jaffe.com

                                                  **Pro hac vice* application forthcoming

                                                  *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 22, 2022, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, by using the Court's CM/ECF filing system. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<u>*/s/ Kenneth A. Klukowski*</u>
Kenneth A. Klukowski
*Attorney for Plaintiffs*

# EXHIBIT 1

# Presidential Documents

Executive Order 13998 of January 21, 2021

## Promoting COVID–19 Safety in Domestic and International Travel

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1**. *Policy*. Science-based public health measures are critical to preventing the spread of coronavirus disease 2019 (COVID–19) by travelers within the United States and those who enter the country from abroad. The Centers for Disease Control and Prevention (CDC), the Surgeon General, and the National Institutes of Health have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID–19. Accordingly, to save lives and allow all Americans, including the millions of people employed in the transportation industry, to travel and work safely, it is the policy of my Administration to implement these public health measures consistent with CDC guidelines on public modes of transportation and at ports of entry to the United States.

**Sec. 2**. *Immediate Action to Require Mask-Wearing on Certain Domestic Modes of Transportation*.

(a) *Mask Requirement*. The Secretary of Labor, the Secretary of Health and Human Services (HHS), the Secretary of Transportation (including through the Administrator of the Federal Aviation Administration (FAA)), the Secretary of Homeland Security (including through the Administrator of the Transportation Security Administration (TSA) and the Commandant of the United States Coast Guard), and the heads of any other executive departments and agencies (agencies) that have relevant regulatory authority (heads of agencies) shall immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on:

(i) airports;

(ii) commercial aircraft;

(iii) trains;

(iv) public maritime vessels, including ferries;

(v) intercity bus services; and

(vi) all forms of public transportation as defined in section 5302 of title 49, United States Code.

(b) *Consultation*. In implementing this section, the heads of agencies shall consult, as appropriate, with interested parties, including State, local, Tribal, and territorial officials; industry and union representatives from the transportation sector; and consumer representatives.

(c) *Exceptions*. The heads of agencies may make categorical or case-by-case exceptions to policies developed under this section, consistent with applicable law, to the extent that doing so is necessary or required by law. If the heads of agencies do make exceptions, they shall require alternative and appropriate safeguards, and shall document all exceptions in writing.

(d) *Preemption*. To the extent permitted by applicable law, the heads of agencies shall ensure that any action taken to implement this section

**APP. 2**

does not preempt State, local, Tribal, and territorial laws or rules imposing public health measures that are more protective of public health than those required by the heads of agencies.

(e) *Coordination.* The Coordinator of the COVID–19 Response and Counselor to the President (COVID–19 Response Coordinator) shall coordinate the implementation of this section. The heads of agencies shall update the COVID–19 Response Coordinator on their progress in implementing this section, including any categorical exceptions established under subsection (c) of this section, within 7 days of the date of this order and regularly thereafter. The heads of agencies are encouraged to bring to the attention of the COVID–19 Response Coordinator any questions regarding the scope or implementation of this section.

**Sec. 3**. *Action to Implement Additional Public Health Measures for Domestic Travel.*

(a) *Recommendations.* The Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including through the Administrator of the TSA and the Commandant of the Coast Guard), in consultation with the Director of CDC, shall promptly provide to the COVID–19 Response Coordinator recommendations concerning how their respective agencies may impose additional public health measures for domestic travel.

(b) *Consultation.* In implementing this section, the Secretary of Transportation and the Secretary of Homeland Security shall engage with interested parties, including State, local, Tribal, and territorial officials; industry and union representatives from the transportation sector; and consumer representatives.

**Sec. 4**. *Support for State, Local, Tribal, and Territorial Authorities.* The COVID–19 Response Coordinator, in coordination with the Secretary of Transportation and the heads of any other relevant agencies, shall promptly identify and inform agencies of options to incentivize, support, and encourage widespread mask-wearing and physical distancing on public modes of transportation, consistent with CDC guidelines and applicable law.

**Sec. 5**. *International Travel.*

(a) *Policy.* It is the policy of my Administration that, to the extent feasible, travelers seeking to enter the United States from a foreign country shall be:

(i) required to produce proof of a recent negative COVID–19 test prior to entry; and

(ii) required to comply with other applicable CDC guidelines concerning international travel, including recommended periods of self-quarantine or self-isolation after entry into the United States.

(b) *Air Travel.*

(i) The Secretary of HHS, including through the Director of CDC, and in coordination with the Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including through the Administrator of the TSA), shall, within 14 days of the date of this order, assess the CDC order of January 12, 2021, regarding the requirement of a negative COVID–19 test result for airline passengers traveling into the United States, in light of subsection (a) of this section. Based on such assessment, the Secretary of HHS and the Secretary of Homeland Security shall take any further appropriate regulatory action, to the extent feasible and consistent with CDC guidelines and applicable law. Such assessment and regulatory action shall include consideration of:

(A) the timing and types of COVID–19 tests that should satisfy the negative test requirement, including consideration of additional testing immediately prior to departure;

(B) the proof of test results that travelers should be required to provide;

(C) the feasibility of implementing alternative and sufficiently protective public health measures, such as testing, self-quarantine, and self-isolation on arrival, for travelers entering the United States from countries where COVID–19 tests are inaccessible, particularly where such inaccessibility of tests would affect the ability of United States citizens and lawful permanent residents to return to the United States; and

(D) measures to prevent fraud.

(ii) The Secretary of HHS, in coordination with the Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including through the Administrator of the TSA), shall promptly provide to the President, through the COVID–19 Response Coordinator, a plan for how the Secretary and other Federal Government actors could implement the policy stated in subsection (a) of this section with respect to CDC-recommended periods of self-quarantine or self-isolation after a flight to the United States from a foreign country, as he deems appropriate and consistent with applicable law. The plan shall identify agencies' tools and mechanisms to assist travelers in complying with such policy.

(iii) The Secretary of State, in consultation with the Secretary of HHS (including through the Director of CDC), the Secretary of Transportation (including through the Administrator of the FAA), and the Secretary of Homeland Security, shall seek to consult with foreign governments, the World Health Organization, the International Civil Aviation Organization, the International Air Transport Association, and any other relevant stakeholders to establish guidelines for public health measures associated with safe international travel, including on aircraft and at ports of entry. Any such guidelines should address quarantine, testing, COVID–19 vaccination, follow-up testing and symptom-monitoring, air filtration requirements, environmental decontamination standards, and contact tracing.

(c) *Land Travel.* The Secretary of State, in consultation with the Secretary of HHS, the Secretary of Transportation, the Secretary of Homeland Security, and the Director of CDC, shall immediately commence diplomatic outreach to the governments of Canada and Mexico regarding public health protocols for land ports of entry. Based on this diplomatic engagement, within 14 days of the date of this order, the Secretary of HHS (including through the Director of CDC), the Secretary of Transportation, and the Secretary of Homeland Security shall submit to the President a plan to implement appropriate public health measures at land ports of entry. The plan should implement CDC guidelines, consistent with applicable law, and take into account the operational considerations relevant to the different populations who enter the United States by land.

(d) *Sea Travel.* The Secretary of Homeland Security, through the Commandant of the Coast Guard and in consultation with the Secretary of HHS and the Director of CDC, shall, within 14 days of the date of this order, submit to the President a plan to implement appropriate public health measures at sea ports. The plan should implement CDC guidelines, consistent with applicable law, and take into account operational considerations.

(e) *International Certificates of Vaccination or Prophylaxis.* Consistent with applicable law, the Secretary of State, the Secretary of HHS, and the Secretary of Homeland Security (including through the Administrator of the TSA), in coordination with any relevant international organizations, shall assess the feasibility of linking COVID–19 vaccination to International Certificates of Vaccination or Prophylaxis (ICVP) and producing electronic versions of ICVPs.

(f) *Coordination.* The COVID–19 Response Coordinator, in consultation with the Assistant to the President for National Security Affairs and the Assistant to the President for Domestic Policy, shall coordinate the implementation of this section. The Secretary of State, the Secretary of HHS, the Secretary of Transportation, and the Secretary of Homeland Security shall

**APP. 4**

update the COVID–19 Response Coordinator on their progress in implementing this section within 7 days of the date of this order and regularly thereafter. The heads of all agencies are encouraged to bring to the attention of the COVID–19 Response Coordinator any questions regarding the scope or implementation of this section.

**Sec. 6**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*January 21, 2021.*

[FR Doc. 2021–01859
Filed 1–25–21; 11:15 am]
Billing code 3295–F1–P

APP. 5

# EXHIBIT 2

The rapidly changing nature of the pandemic requires not only that CDC act swiftly, but also deftly to ensure that its actions are commensurate with the threat. This necessarily involves assessing evolving conditions that inform CDC's determinations.

The conditions that existed on September 4, 2020 have only worsened. As of January 21, 2021, there have been over 24,400,000 cases and over 400,000 deaths. Data collected by Princeton University show that eviction filings are occurring; it is therefore expected that large numbers of evictions would be processed if the Order were to expire. [*https://evictionlab.org/eviction-tracking*]. Without this Order, there is every reason to expect that evictions will increase significantly, resulting in further spread of COVID–19. It is imperative to act quickly to protect the public health, and it would be impracticable and contrary to the public interest to delay the issuance and effective date of the Order pending notice-and-comment rulemaking.

Similarly, if this Order qualifies as a rule under the APA, the Office of Information and Regulatory Affairs (OIRA) has determined that it would be a major rule under the Congressional Review Act (CRA). But there would not be a delay in its effective date. The agency has determined that for the same reasons, there would be good cause under the CRA to make the requirements herein effective immediately

If any provision of this Order, or the application of any provision to any persons, entities, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any persons, entities, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

This Order shall be enforced by federal authorities and cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18. However, this Order has no effect on the contractual obligations of renters to pay rent and shall not preclude charging or collecting fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract.

*Criminal Penalties*

Under 18 U.S.C. 3559, 3571; 42 U.S.C. 271; and 42 CFR 70.18, a person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death, or a fine of no more than $250,000 if the

violation results in a death, or as otherwise provided by law. An organization violating this Order may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law. The U.S. Department of Justice may initiate criminal proceedings as appropriate seeking imposition of these criminal penalties.

*Notice to Cooperating State and Local Officials*

Under 42 U.S.C. 243, the U.S. Department of Health and Human Services is authorized to cooperate with and aid state and local authorities in the enforcement of their quarantine and other health regulations and to accept state and local assistance in the enforcement of Federal quarantine rules and regulations, including in the enforcement of this Order.

*Notice of Available Federal Resources*

While this Order to prevent eviction is effectuated to protect the public health, the states and units of local government are reminded that the Federal Government has deployed unprecedented resources to address the pandemic, including housing assistance.

The Department of Housing and Urban Development (HUD) has informed CDC that all HUD grantees—states, cities, communities, and nonprofits—who received Emergency Solutions Grants (ESG) or Community Development Block Grant (CDBG) funds under the CARES Act may use these funds to provide temporary rental assistance, homelessness prevention, or other aid to individuals who are experiencing financial hardship because of the pandemic and are at risk of being evicted, consistent with applicable laws, regulations, and guidance.

HUD has further informed CDC that: HUD's grantees and partners play a critical role in prioritizing efforts to support this goal. As grantees decide how to deploy CDBG–CV and ESG–CV funds provided by the CARES Act, all communities should assess what resources have already been allocated to prevent evictions and homelessness through temporary rental assistance and homelessness prevention, particularly to the most vulnerable households.

HUD stands at the ready to support American communities take these steps to reduce the spread of COVID–19 and maintain economic prosperity. Where gaps are identified, grantees should coordinate across available Federal, non-Federal, and philanthropic funds to ensure these critical needs are

sufficiently addressed and utilize HUD 's technical assistance to design and implement programs to support a coordinated response to eviction prevention needs. For program support, including technical assistance, please visit *www.hudexchange.info/program-support*. For further information on HUD resources, tools, and guidance available to respond to the COVID–19 pandemic, state and local officials are directed to visit *https://www.hud.gov/coronavirus*. These tools include toolkits for Public Housing Authorities and Housing Choice Voucher landlords related to housing stability and eviction prevention, as well as similar guidance for owners and renters in HUD-assisted multifamily properties.

Similarly, the Department of the Treasury has informed CDC that the funds allocated through the Coronavirus Relief Fund and the Emergency Rental Assistance Program may be used to fund rental assistance programs to prevent eviction. Visit *https://home.treasury.gov/policy-issues/cares/state-and-local-governments* for more information about the Coronavirus Relief Fund and *https://home.treasury.gov/policy-issues/cares/emergency-rental-assistance-program* for more information about the Emergency Rental Assistance Program..

*Effective Date*

This Order is effective on January 31, 2021 and will remain in effect, unless extended, modified, or rescinded, through March 31, 2021.

**Authority**

The authority for this Order is Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2.

Dated: January 29, 2021.

**Sherri Berger**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02243 Filed 1–29–21; 4:15 pm]

**BILLING CODE 4163–18–P**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Disease Control and Prevention**

**Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs**

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of Agency Order.

**APP. 7**

**SUMMARY:** The Centers for Disease Control and Prevention (CDC), a component of the U.S. Department of Health and Human Services (HHS), announces an Agency Order requiring persons to wear masks over the mouth and nose when traveling on any conveyance (*e.g.,* airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States. A person must also wear a mask on any conveyance departing from the United States until the conveyance reaches its foreign destination. Additionally, a person must wear a mask while at any transportation hub within the United States (*e.g.,* airport, bus terminal, marina, train station, seaport or other port, subway station, or any other area that provides transportation within the United States). Furthermore, operators of conveyances and transportation hubs must use best efforts to ensure that persons wear masks as required by this Order.

**DATES:** This Order takes effect at 11:59 p.m. Monday February 1, 2021.

**FOR FURTHER INFORMATION CONTACT:** Jennifer Buigut, Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H16–4, Atlanta, GA 30329. Email: *dgmqpolicyoffice@ cdc.gov.*

**SUPPLEMENTARY INFORMATION:** The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Some people without symptoms also spread the virus. In general, the more closely a person interacts with others and the longer that interaction, the higher the risk of COVID–19 spread.

This Order is issued to preserve human life; maintain a safe and operating transportation system; mitigate the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and support response efforts to COVID–19 at the Federal, state, local, territorial, and tribal level.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public

settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

This Order will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

A copy of the Order is provided below and a copy of the signed order can be found at *https://www.cdc.gov/ quarantine/masks/mask-travel- guidance.html*

**CENTERS FOR DISEASE CONTROL AND PREVENTION**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**ORDER UNDER SECTION 361**

**OF THE PUBLIC HEALTH SERVICE ACT (42 U.S.C. 264)**

**AND 42 CODE OF FEDERAL REGULATIONS 70.2, 71.31(b), 71.32(b)**

**REQUIREMENT FOR PERSONS TO WEAR MASKS**

**WHILE ON CONVEYANCES AND AT TRANSPORTATION HUBS**

*SUMMARY:*

Notice and Order; and subject to the limitations under ''Applicability,'' pursuant to 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b):

(1) Persons [1] must wear [2] masks over the mouth and nose when traveling on conveyances into and within the United States. Persons must also wear masks at transportation hubs as defined in this Order.

(2) A conveyance operator transporting persons into and within the United States [3] must require all persons onboard to wear masks for the duration of travel.

(3) A conveyance operators operating a conveyance arriving at or departing from a U.S. port of entry must require all persons on board to wear masks for

the duration of travel as a condition of controlled free pratique.[4]

(4) Conveyance operators must use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel. Best efforts include:

• Boarding only those persons who wear masks;

• instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law;

• monitoring persons onboard the conveyance for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, disembarking any person who refuses to comply; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance of the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

(5) Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask. Best efforts include:

• Allowing entry only to those persons who wear masks;

• instructing persons that Federal law requires wearing a mask in the transportation hub and failure to comply constitutes a violation of Federal law;

• monitoring persons on the premises of the transportation hub for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, removing any person who refuses to comply from the premises of the transportation hub; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance with the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or

---

[1] As used in this Order, ''persons'' includes travelers (*i.e.,* passengers and crew), conveyance operators, and any workers or service providers in the transportation hub.

[2] To ''wear a mask'' means to wear a mask over the nose and mouth.

[3] This includes international, interstate, or intrastate waterways, subject to the jurisdiction of the United States.

[4] As a condition of this controlled free pratique to commence or continue operations in the United States, conveyance operators must additionally require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons on the conveyance (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. This precaution must be followed regardless of scheduled itinerary.

**APP. 8**

email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

*DEFINITIONS:*

*Controlled free pratique* shall have the same definition as under 42 CFR 71.1, meaning "permission for a carrier to enter a U.S. port, disembark, and begin operation under certain stipulated conditions."

*Conveyance* shall have the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle,[5] vessel . . . or other means of transport, including military." Included in the definition of "conveyance" is the term "carrier" which under 42 CFR 71.1 has the same definition as conveyance under 42 CFR 70.1.

*Conveyance operator* means an individual operating a conveyance and an individual or organization causing or authorizing the operation of a conveyance.

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[6]

*Interstate traffic* shall have the same definition as under 42 CFR 70.1, meaning

"(1):

(i) The movement of any conveyance or the transportation of persons or property, including any portion of such movement or transportation that is entirely within a state or possession—

(ii) From a point of origin in any state or possession to a point of destination in any other state or possession; or

(iii) Between a point of origin and a point of destination in the same state or possession but through any other state, possession, or contiguous foreign country.

(2) Interstate traffic does not include the following:

(i) The movement of any conveyance which is solely for the purpose of unloading persons or property transported from a foreign country or loading persons or property for transportation to a foreign country.

(ii) The movement of any conveyance which is solely for the purpose of effecting its repair, reconstruction, rehabilitation, or storage."

*Intrastate traffic* means the movement of any conveyance or the transportation or movement of persons occurring solely within the boundaries of a state or territory, or on tribal land.

*Possession* shall have the same definition as under 42 CFR 70.1 and 71.1, meaning a "U.S. territory."

*State* shall have the same definition as under 42 CFR 70.1, meaning "any of the 50 states, plus the District of Columbia."

*Territory* shall have the same definition as "U.S. territory" under 42 CFR 70.1 and 71.1, meaning "any territory (also known as possessions) of the United States, including American Samoa, Guam, the [Commonwealth of the] Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands."

*Transportation hub* means any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

*Transportation hub operator* means an individual operating a transportation hub and an individual or organization causing or authorizing the operation of a transportation hub.

*U.S. port* shall have the same definition as under 42 CFR 71.1, meaning any "seaport, airport, or border crossing point under the control of the United States."

*STATEMENT OF INTENT:*

This Order shall be interpreted and implemented in a manner as to achieve the following objectives:
• Preservation of human life;
• Maintaining a safe and secure operating transportation system;
• Mitigating the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and
• Supporting response efforts to COVID–19 at the Federal, state, local, territorial, and tribal levels.

*APPLICABILITY:*

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe that (1) requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Such

requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In addition, the requirement to wear a mask shall not apply under the following circumstances:
• While eating, drinking, or taking medication, for brief periods;
• While communicating with a person who is hearing impaired when the ability to see the mouth is essential for communication;
• If, on an aircraft, wearing of oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation;
• If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance;[7] or
• When necessary to temporarily remove the mask to verify one's identity such as during Transportation Security Administration screening or when asked to do so by the ticket or gate agent or any law enforcement official.

This Order exempts the following categories of persons:[8]
• A child under the age of 2 years;
• A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 *et seq.*).[9]

---

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID–19 such as a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19. CDC definitions for SARS-CoV–2 viral test and documentation of recovery are available in the Frequently Asked Questions at: *https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.* Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask
Continued

---

[5] This includes rideshares meaning arrangements where passengers travel in a privately owned road vehicle driven by its owner in connection with a fee or service.

[6] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N–95 respirators fulfill the requirements of this Order. CDC guidance for attributes of acceptable masks in the context of this Order is available at: *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.*

• A person for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

This Order exempts the following categories of conveyances, including persons on board such conveyances:

• Private conveyances operated solely for personal, non-commercial use;

• Commercial motor vehicles or trucks as these terms are defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle or truck;

• Conveyances operated or chartered by the U.S. military services provided that such conveyance operators observe Department of Defense precautions to prevent the transmission of COVID–19 that are equivalent to those in this Order.

This Order applies to persons on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities, as well as the operators themselves. U.S. state, local, territorial, or tribal government authorities directly operating conveyances and transportation hubs may be subject to additional federal authorities or actions, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities.

To the extent permitted by law, and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel),[10] Federal agencies are required to implement additional measures enforcing the provisions of this Order.

*BACKGROUND:*

There is currently a pandemic of respiratory disease (coronavirus disease 2019 or "COVID–19") caused by a novel coronavirus (SARS–COV–2). As of January 27, 2021, there have been 99,638,507 confirmed cases of COVID–19 globally, resulting in more than 2,141,000 deaths. As of January 27, 2021, there have been over 25,000,000 cases identified in the United States and over 415,000 deaths due to the disease. New SARS–CoV–2 variants have emerged in recent weeks, including at

least one with evidence of increased transmissibility.[11]

The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Infected people without symptoms (asymptomatic) and those in whom symptoms have not yet developed (pre-symptomatic) can also spread the virus. In general, the more closely an infected person interacts with others and the longer those interactions, the higher the risk of COVID–19 spread. COVID–19 may be transmitted by touching surfaces or objects that have the virus on them and then touching one's own or another person's eyes, nose, or mouth.

Masks help prevent people who have COVID–19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others.[12] Masks are primarily intended to reduce the emission of virus-laden droplets, *i.e.,* they act as source control by blocking exhaled virus.[13] This is especially relevant for asymptomatic or pre-symptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions.[14][15] Masks also provide personal protection to the wearer by reducing inhalation of these droplets, *i.e.,* they reduce wearers' exposure through filtration.[16] The community benefit of wearing masks for SARS–CoV–2 control is due to the combination of these effects; individual prevention benefit increases with increasing

numbers of people using masks consistently and correctly.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Seven studies have confirmed the benefit of universal masking in community level analyses: in a unified hospital system,[17] a German city,[18] a U.S. State,[19] a panel of 15 U.S. States and Washington, DC,[20][21] as well as both Canada[22] and the United States[23] nationally. Each analysis demonstrated that, following directives from organizational and political leadership for universal masking, new infections fell significantly. Two of these studies[24][25] and an additional analysis of data from 200 countries that included localities within the United States[26] also demonstrated reductions in

---

for reasons related to the disability. CDC will issue additional guidance regarding persons who cannot wear a mask under this exemption. *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.*

[10] *https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-promoting-covid-19-safety-in-domestic-and-international-travel/.*

[11] *https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/scientific-brief-emerging-variants.html.*

[12] *https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html.*

[13] Leung NHL, Chu DKW, Shiu EYC, et al. Respiratory virus shedding in exhaled breath and efficacy of face masks. *Nature Medicine.* 2020;26(5):676–680.*https://dx.doi.org/10.1038/s41591-020-0843-2.*

[14] Moghadas SM, Fitzpatrick MC, Sah P, et al. The implications of silent transmission for the control of COVID–19 outbreaks. *Proc Natl Acad Sci U S A.* 2020;117(30):17513–17515.10.1073/pnas.2008373117. *https://www.ncbi.nlm.nih.gov/pubmed/32632012.*

[15] Johansson MA, Quandelacy TM, Kada S, et al. SARS–CoV–2 Transmission From People Without COVID–19 Symptoms. Johansson MA, et al. JAMA Netw Open. 2021 Jan 4;4(1):e2035057. doi: 10.1001/jamanetworkopen.2020.35057.

[16] Ueki H, Furusawa Y, Iwatsuki-Horimoto K, et al. Effectiveness of Face Masks in Preventing Airborne Transmission of SARS–CoV–2. *mSphere.* 2020;5(5).10.1128/mSphere.00637–20. *https://www.ncbi.nlm.nih.gov/pubmed/33087517.*

[17] Wang X, Ferro EG, Zhou G, Hashimoto D, Bhatt DL. Association Between Universal Masking in a Health Care System and SARS–CoV–2 Positivity Among Health Care Workers. *JAMA.* 2020.10.1001/jama.2020.12897. *https://www.ncbi.nlm.nih.gov/pubmed/32663246.*

[18] Mitze T., Kosfeld R., Rode J., Wälde K. *Face Masks Considerably Reduce COVID–19 Cases in Germany: A Synthetic Control Method Approach.* IZA—Institute of Labor Economics (Germany);2020.ISSN: 2365–9793, DP No. 13319. *http://ftp.iza.org/dp13319.pdf.*

[19] Gallaway MS, Rigler J, Robinson S, et al. Trends in COVID–19 Incidence After Implementation of Mitigation Measures—Arizona, January 22-August 7, 2020. *MMWR Morb Mortal Wkly Rep.* 2020;69(40):1460–1463.10.15585/mmwr.mm6940e3. *https://www.ncbi.nlm.nih.gov/pubmed/33031366.*

[20] Lyu W, Wehby GL. Community Use Of Face Masks And COVID–19: Evidence From A Natural Experiment Of State Mandates In The US. *Health Aff (Millwood).* 2020;39(8):1419–1425.10.1377/hlthaff.2020.00818. *https://www.ncbi.nlm.nih.gov/pubmed/32543923.*

[21] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html.* Accessed January 20, 2021.

[22] Karaivanov A., Lu SE, Shigeoka H., Chen C., Pamplona S. *Face Masks, Public Policies and Slowing the Spread of Covid–19: Evidence from Canada* National Bureau of Economic Research 2020. Working Paper 27891. *http://www.nber.org/papers/w27891.*

[23] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[24] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html.* Accessed January 20, 2021.

[25] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[26] Leffler CT, Ing EB, Lykins JD, Hogan MC, McKeown CA, Grzybowski A. Association of country-wide coronavirus mortality with demographics, testing, lockdowns, and public wearing of masks. Am J Trop Med Hyg. 2020 Dec;103(6):2400–2411. doi: 10.4269/ajtmh.20–1015. Epub 2020 Oct 26.

**8029**

mortality. An economic analysis using U.S. data found that, given these effects, increasing universal masking by 15% could prevent the need for lockdowns and reduce associated losses of up to $1 trillion or about 5% of gross domestic product.[27]

Wearing a mask especially helps protect those at increased risk of severe illness from COVID–19[28] and workers who frequently come into close contact with other people (*e.g.,* at transportation hubs). Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

Traveling on multi-person conveyances increases a person's risk of getting and spreading COVID–19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces. Air travel often requires spending time in security lines and crowded airport terminals. Social distancing may be difficult if not impossible on flights. People may not be able to distance themselves by the recommended 6 feet from individuals seated nearby or those standing in or passing through the aircraft's aisles. Travel by bus, train, vessel, and other conveyances used for international, interstate, or intrastate transportation pose similar challenges.

Intrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus, particularly on public conveyances and in travel hubs, where passengers who may themselves be traveling only within their state or territory commonly interact with others traveling between states or territories or internationally. Some states, territories, Tribes, and local public health authorities have imposed mask-wearing requirements within their jurisdictional boundaries to protect public health.[29]

Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID–19 from such state or territory to any other state or territory. That determination is based on, *inter alia,* the rapid and continuing transmission of the virus across all states and territories and across most of the world. Furthermore, given how interconnected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wearing masks.

Therefore, I have determined that the mask-wearing requirements in this Order are reasonably necessary to prevent the further introduction, transmission, or spread of COVID–19 into the United States and among the states and territories. Individuals traveling into or departing from the United States, traveling interstate, or traveling entirely intrastate, conveyance operators that transport such individuals, and transportation hub operators that facilitate such transportation, must comply with the mask-wearing requirements set forth in this Order.

America's transportation systems are essential. Not only are they essential for public health, they are also essential for America's economy and other bedrocks of American life. Those transportation systems carry life-saving medical supplies and medical providers into and across the nation to our hospitals, nursing homes, and physicians' offices. Trains, planes, ships, and automobiles bring food and other essentials to our communities and to our homes. Buses bring America's children and teachers to school. Buses, trains, and subways, bring America's workforce to their jobs.

Requiring masks on our transportation systems will protect Americans and provide confidence that we can once again travel safely even during this pandemic. Therefore, requiring masks will help us control this pandemic and aid in re-opening America's economy.

The United States and countries around the world are currently embarking on efforts to vaccinate their populations, starting with healthcare personnel and other essential workers at increased risk of exposure to SARS–

CoV–2 and people at increased risk for severe illness from the virus. While vaccines are highly effective at preventing severe or symptomatic COVID–19, at this time there is limited information on how much the available COVID–19 vaccines may reduce transmission in the general population and how long protection lasts.[30] Therefore, this mask requirement, as well as CDC recommendations to prevent spread of COVID–19,[31] additionally apply to vaccinated persons. Similarly, CDC recommends that people who have recovered from COVID–19 continue to take precautions to protect themselves and others, including wearing masks;[32] therefore, this mask requirement also applies to people who have recovered from COVID–19.

*ACTION:*

Until further notice, under 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b), unless excluded or exempted as set forth in this Order, a person must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States. A person must also wear a mask at any transportation hub that provides transportation within the United States.

Conveyance operators traveling into or within the United States may transport only persons wearing masks and must use best efforts to ensure that masks are worn when embarking, disembarking, and throughout the duration of travel. Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask.

As a condition of receiving controlled free pratique under 42 CFR 71.31(b) to enter a U.S. port, disembark passengers, and begin operations at any U.S. port of entry, conveyances arriving into the United States must require persons to wear masks while boarding, disembarking, and for the duration of travel. Conveyance operators must also require all persons to wear masks while boarding and for the duration of their travel on board conveyances departing from the United States until the conveyance arrives at the foreign destination, if at any time any of the persons onboard (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. These travel conditions are

[27] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html.* Accessed January 20, 2021.

[28] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.*

[29] Based on internet sources, 37 states plus DC and Puerto Rico mandate the wearing of masks in public. Among the jurisdictions that have imposed mask mandates, variations in requirements exist. For example, exemptions for children range in cutoff age from 2 to 12, but masks are generally required in indoor public spaces such as restaurants and stores, on public transit and ride-hailing services, and outdoors when unable to maintain 6

feet of distance from others. *See https://www.aarp.org/health/healthy-living/info-2020/states-mask-mandates-coronavirus.html* (accessed January 28, 2021).

[30] *https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-considerations.html.*

[31] *https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.*

[32] *https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.*

**APP. 11**

necessary to mitigate the harm of further introduction of COVID–19 into the United States.

Requiring a properly worn mask is a reasonable and necessary measure to prevent the introduction, transmission and spread of COVID–19 into the United States and among the states and territories under 42 U.S.C. 264(a) and 42 CFR 71.32(b). Among other benefits, masks help prevent dispersal of an infected person's respiratory droplets that carry the virus. That precaution helps prevent droplets from landing in the eye, mouth, or nose or possibly being inhaled into the lungs of an uninfected person, or from landing on a surface or object that an uninfected person may then touch and then touch his or her own or another's eyes, nose, or mouth. Masks also provide some protection to the wearer by helping reduce inhalation of respiratory droplets.

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe, where the controlling governmental authority: (1) Requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Those requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In accordance with 42 U.S.C. 264(e), state, local, territorial, and tribal authorities may impose additional requirements that provide greater public health protection and are more restrictive than the requirements in this Order. Consistent with other federal, state, or local legal requirements, this Order does not preclude operators of conveyances or transportation hubs from imposing additional requirements, or conditions for carriage, that provide greater public health protection and are more restrictive than the requirements in this Order (*e.g.,* requiring a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19 or imposing requirements for social distancing or other recommended protective measures).

This Order is not a rule within the meaning of the Administrative Procedure Act ("APA") but rather is an emergency action taken under the existing authority of 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), 71.32(b). In the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment and

the opportunity to comment on this Order and the delay in effective date. Considering the public health emergency caused by COVID–19, it would be impracticable and contrary to the public's health, and by extension the public's interest, to delay the issuance and effective date of this Order. Similarly, the Office of Information and Regulatory Affairs has determined that if this Order were a rule, it would be a major rule under the Congressional Review Act, but there would not be a delay in its effective date as the agency has determined that there would be good cause to make the requirements herein effective immediately under the APA.

This order is also an economically significant regulatory action under Executive Order 12866 and has therefore been reviewed by the Office of Information and Regulatory Affairs of the Office of Management and Budget. The agency is proceeding without the complete analysis required by Executive Order 12866 under the emergency provisions of 6(a)(3)(D) of that Order.

If any provision of this Order, or the application of any provision to any carriers, conveyances, persons, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any carriers, conveyances, persons, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

To address the COVID–19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305 and 1546.105.

This Order shall be further enforced by other federal authorities and may be enforced by cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18 and 71.2.[33]

*EFFECTIVE DATE:*

This Order shall enter into effect on February 1, 2021, at 11:59 p.m. and will

---

[33] While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel).

remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

Dated: February 1, 2021.

**Sherri Berger,**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02340 Filed 2–1–21; 4:15 pm]

**BILLING CODE 4163–18–P**

---

# DEPARTMENT OF THE INTERIOR

## Geological Survey

**[GX20EG31DW50100; OMB Control Number 1028-New]**

## Agency Information Collection Activities; Hydrography Addressing tool

**AGENCY:** U.S. Geological Survey, Interior.

**ACTION:** Notice of Information Collection; request for comment.

**SUMMARY:** In accordance with the Paperwork Reduction Act of 1995, we, the U.S. Geological Survey (USGS) are proposing a new information collection.

**DATES:** Interested persons are invited to submit comments on or before April 5, 2021.

**ADDRESSES:** Send your comments on this information collection request (ICR) by mail to U.S. Geological Survey, Information Collections Officer, 12201 Sunrise Valley Drive MS 159, Reston, VA 20192; or by email to *gs-info_ collections@usgs.gov.* Please reference OMB Control Number 1028–xxxx in the subject line of your comments.

**FOR FURTHER INFORMATION CONTACT:** To request additional information about this ICR, contact Michael Tinker by email at *mdtinker@usgs.gov* or by telephone at 303–202–4476.

**SUPPLEMENTARY INFORMATION:** In accordance with the Paperwork Reduction Act of 1995, we provide the general public and other Federal agencies with an opportunity to comment on new, proposed, revised, and continuing collections of information. This helps us assess the impact of our information collection requirements and minimize the public's reporting burden. It also helps the public understand our information collection requirements and provide the requested data in the desired format.

We are soliciting comments on the proposed ICR that is described below.

**APP. 12**

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., MATTHEW KRAUSE, DONNA BRAMSON, and S.P., a minor, by his next friend and father, Anthony Perkins, | |
| *Plaintiffs,* | |
| v. | Civil Action No.: 4:22-cv-00209-O |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, in his official capacity as Secretary of Transportation, FEDERAL AVIATION ADMINISTRATION,  STEPHEN M. DICKSON, in his official capacity as Administrator of the FAA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROCHELLE P. WALENSKY, in her official capacity as Director of the CDC, SHERRI A. BERGER, in her official capacity as Chief of Staff of the CDC, U.S. DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, TRANSPORTATION SECURITY ADMINISTRATION, DAVID P. PEKOSKE, in his official capacity as Administrator of the TSA, and the UNITED STATES OF AMERICA, | |
| *Defendants.* | |

**Affidavit of Donna Brunson Bramson**

I, Donna Brunson Bramson, declare as follows:

1.      I am 77 years of age, a U.S. citizen, and a resident of Haslet, in Tarrant County, Texas.

2.      I am a member of FRC Action, a nonprofit organization.

3.      When I fly on commercial airplanes, I most often fly from DFW Airport because its location in Tarrant County makes it the nearest major airport to my home.

4.      I am currently booked to fly on commercial aircraft to or from DFW Airport during the next month, specifically on April 6, April 12, and April 14.

5.      I do not want to wear a mask on those flights.

6.      I would not be wearing a mask on those flights if it was not required by the relevant Federal agencies.

I declare under penalty of perjury that the foregoing is true and correct.

3-22-2022
Date

Donna Brunson Bronson
Name

2

APP. 15

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FAMILY RESEARCH COUNCIL ACTION, INC.,
MATTHEW KRAUSE, DONNA BRAMSON, and S.P., a
minor, by his next friend and father, Anthony Perkins,

Plaintiffs,

v.

JOSEPH R. BIDEN, JR., in his official capacity
as President of the United States, U.S. DEPARTMENT OF
TRANSPORTATION, PETER P. BUTTIGIEG, in his official
capacity as Secretary of Transportation, FEDERAL
AVIATION ADMINISTRATION, STEPHEN M. DICKSON,
in his official capacity as Administrator of the FAA, U.S.
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
XAVIER BECERRA, in his official capacity as Secretary of
Health and Human Services, CENTERS FOR DISEASE
CONTROL AND PREVENTION, ROCHELLE P.
WALENSKY, in her official capacity
as Director of the CDC, SHERRI A. BERGER, in her official
capacity as Chief of Staff of the CDC, U.S. DEPARTMENT
OF HOMELAND SECURITY, ALEJANDRO MAYORKAS,
in his official capacity as Secretary of Homeland Security,
TRANSPORTATION SECURITY ADMINISTRATION,
DAVID P. PEKOSKE, in his official capacity as Administrator
of the TSA, and the UNITED STATES OF AMERICA,

Defendants.

Civil Action No.:
4:22-cv-00209-O

### Affidavit of Matthew Haston Krause

I, Matthew Haston Krause, declare as follows:

1.  I am 41 years of age, a U.S. citizen, and a resident of Haslet, in Tarrant County, Texas.

2.  I currently serve in the Texas House of Representatives, where I represent the 93rd District.

3.  I am a member of FRC Action, a nonprofit organization.

**APP. 17**

4.      When I fly on commercial airplanes, I most often fly from DFW Airport because its location in Tarrant County makes it the nearest major airport to my home.

5.      I am currently booked to fly on commercial aircraft to or from DFW Airport during the next month, specifically on April 13, April 14, and April 16.

6.      I likewise plan on traveling by air during May 2022 and later in this year as well.

7.      I do not want to wear a mask on those flights.

8.      I do not want to wear a mask in the airports I must walk through before and after my flights.

9.      My current understanding is that a federal mask mandate requires me to wear a mask when in an airport and during my flights.

10.     I would not be wearing a mask on those flights or in airports if I was not required to do so by the relevant Federal agencies.

I declare under penalty of perjury that the foregoing is true and correct.

3-28-22
_____
Date

Matthew H. Krause
_____
Name

**APP. 18**

# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., MATTHEW KRAUSE, DONNA BRAMSON, and S.P., a minor, by his next friend and father, Anthony Perkins,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, U.S. DEPARTMENT OF TRANSPORTATION, PETER P. BUTTIGIEG, in his official capacity as Secretary of Transportation, FEDERAL AVIATION ADMINISTRATION, STEPHEN M. DICKSON, in his official capacity as Administrator of the FAA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROCHELLE P. WALENSKY, in her official capacity as Director of the CDC, SHERRI A. BERGER, in her official capacity as Chief of Staff of the CDC, U.S. DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, TRANSPORTATION SECURITY ADMINISTRATION, DAVID P. PEKOSKE, in his official capacity as Administrator of the TSA, and the UNITED STATES OF AMERICA,<br><br>*Defendants*. | Civil Action No.: 4:22-cv-00209-O |

## Affidavit of Anthony Richard Perkins

I, Anthony Richard Perkins, declare as follows:

1.    I am 59 years of age, a U.S. citizen, and a resident of Louisiana.

2.    I am the President of Family Research Council Action, Inc. (FRC Action), a nonprofit organization under 26 U.S.C. § 501(c)(4).

3.    FRC Action is the legislative affiliate of the Family Research Council, which is a 501(c)(3) organization, and I am the President of that organization as well.

**APP. 20**

4.      Family Research Council's mission is to advance faith, family, and freedom in public policy and the culture from a biblical worldview.

5.      Family Research Council has several staff positions where this "freedom" aspect is particularly prominent, such as our Senior Fellow for Human Rights and Constitutional Governance, which is a position held by former Ambassador J. Kenneth Blackwell.

6.      Part of the "freedom" aspect of Family Research Council's mission is opposing government overreach, including illegal mandates generally speaking.  Such overreaching mandates are not consistent with constitutional governance.

7.      It is the position of FRC Action that the mask mandate President Biden ordered in Executive Order 13998 for commercial aircraft and airports, a mandate which was subsequently imposed by the agencies he named in that Executive Order, is one such illegal mandate.

8.      FRC Action thus has a mission-related interest in opposing Executive Order 13998's mask mandate.

9.      When my staff last checked on March 21, 2022, FRC Action had 26,163 members nationwide, including 1,493 members in Texas.

10.     With so many members, it is virtually certain that there are FRC Action members on commercial flights in various locations in the United States on any given day.

11.     Many FRC Action members I speak with do not want to wear masks on airplanes.

12.     Nor do many of those FRC Action members want to wear masks in airports.

13.     I am the father of a 14 year-old child whose initials are S.P., who is a plaintiff here.

14.     S.P. resides with me, his mother, and siblings in our home in Louisiana.

15.     S.P. frequently travels with me by commercial aircraft across the nation.  S.P. is currently booked to travel with me on commercial flights in the near future, including in the month of April (prior to April 18), with additional travel planned in May and June.

16.     S.P. does not want to wear a mask on those flights.

17.     S.P. would not be wearing a mask on those flights if it was not required by the relevant Federal agencies.

18.     Thousands of FRC Action members are parents of minor children of various ages, and many of those members I speak with do not want their children to wear a mask regardless of age.

I declare under penalty of perjury that the foregoing is true and correct.

**APP. 21**

3/30/2022
Date

A. R. Perkins

Name

**APP. 22**

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

FAMILY RESEARCH COUNCIL ACTION,
INC., *et al.*,

        *Plaintiffs,*

        v.

JOSEPH R. BIDEN, JR., in his official capacity
as President of the United States, *et al.*,

        *Defendants.*

Civil Action No.:
4:22-cv-00209-O

### Affidavit of Paul Kepes

I, Paul Kepes, declare as follows:

1.     I am 54 years of age and a U.S. citizen.

2.     For many years I was exclusively a resident of Chicago, Illinois. I currently have two residences, with the other residence in Wisconsin.

3.     However, I still maintain my Chicago home and spend significant time there, and as a consequence, my primary airport is O'Hare International Airport in Chicago.

4.     I travel frequently, and am booked to fly out of O'Hare multiple times in the near future, including during May 2022.

5.     I was required to wear a mask when I traveled through O'Hare in April 2022, and if there is a masking requirement in place at that time, I will need to wear a mask again when I travel through O'Hare in May 2022.

6.     I am a member of Family Research Council Action, Inc. (FRC Action), a nonprofit organization.

7.     I find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult, and find that wearing masks on airplanes and in airports interferes with my enjoyment of air travel, both in the airport and on the airplane.

8.     I oppose the burdens imposed by purchasing or otherwise obtaining masks, keeping them on my person, and ensuring they are clean and in suitable condition to wear.

9.     I am also concerned about possible health risks relating to wearing masks, such as possible risks I learn about through conversations or news reports.

10.     I do not want to wear masks on airplanes or in airports.

11.     I would not wear a mask if not required to do so.

I declare under penalty of perjury that the foregoing is true and correct.

APRIL 21, 2022
_____
Date

_____
Name

2

**APP. 25**

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*,

*Plaintiffs,*

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,

*Defendants.*

Civil Action No.:
4:22-cv-00209-O

### Affidavit of John Kenneth Blackwell

I, John Kenneth Blackwell, declare as follows:

1.     I am 74 years of age, a U.S. citizen, and a resident of Ohio.

2.     I am a member of Family Research Council Action, Inc. (FRC Action), a nonprofit organization.

3.     I find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

4.     I also find that wearing masks on airplanes and in airports interferes with my enjoyment of air travel, both in the airport and on the airplane.

5.     I oppose the burdens imposed by purchasing or otherwise obtaining masks, keeping them on my person, and ensuring they are clean and in suitable condition to wear.

6.     I am also concerned about possible health risks relating to wearing masks, such as possible risks I learn about through conversations or news reports.

7.     I do not want to wear masks on airplanes or in airports.

8.     I travel frequently by air, and some of those trips are to or through airports in Chicago and New York City, where I am informed that there might be some sort of ongoing mask requirements.

9.     It would impose significant additional obstacles to my travel to avoid those airports when my final destination is either of those cities, and is sometimes the case.

**APP. 27**

I declare under penalty of perjury that the foregoing is true and correct.

April 22, 2022
_____
Date

_____
Name

2

**APP. 28**

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*, | |
| *Plaintiffs,* | |
| v. | Civil Action No.: 4:22-cv-00209-O |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | |
| *Defendants.* | |

**Affidavit of William Gerald Boykin**

I, William Gerald Boykin, declare as follows:

1.      I am 74 years of age, a U.S. citizen, and a resident of Virginia.

2.      I am a member of Family Research Council Action, Inc. (FRC Action), a nonprofit organization.

3.      I find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult, and find that wearing masks on airplanes and in airports interferes with my enjoyment of air travel, both in the airport and on the airplane.

4.       I oppose the burdens imposed by purchasing or otherwise obtaining masks, keeping them on my person, and ensuring they are clean and in suitable condition to wear.

5.      I am also concerned about possible health risks relating to wearing masks, such as possible risks I learn about through conversations or news reports.

6.      I do not want to wear masks on airplanes or in airports.

7.      I travel frequently by air, and am currently booked to travel through Chicago's O'Hare International Airport in the coming weeks.

I declare under penalty of perjury that the foregoing is true and correct.

04-22-2022
Date  _____          Name  _____

**APP. 30**

# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FAMILY RESEARCH COUNCIL ACTION,
INC., *et al.*,

                *Plaintiffs,*

                v.

JOSEPH R. BIDEN, JR., in his official
capacity
as President of the United States, *et al.*,

                *Defendants.*

Civil Action No.:
4:22-cv-00209-O

### Supplemental Affidavit of Matthew Haston Krause

I, Matthew Haston Krause, declare as follows:

1.    I am 41 years of age, a U.S. citizen, and a resident of Texas.

2.    I am a member of Family Research Council Action, Inc. (FRC Action), a nonprofit organization.

3.    I find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

4.    I also find that wearing masks on airplanes and in airports interferes with my enjoyment of air travel, both in the airport and on the airplane.

5.    I oppose the burdens imposed by purchasing or otherwise obtaining masks, keeping them on my person, and ensuring they are clean and in suitable condition to wear.

6.    I am also concerned about possible health risks relating to wearing masks, such as possible risks I learn about through conversations or news reports.

7.    I do not want to wear masks on airplanes or in airports.

8.    I am a parent of minor children, ages 5, 8, 10, 13, and 15.

9.    My children find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

**APP. 32**

10. They also find that wearing masks on airplanes and in airports interferes with their enjoyment of air travel, both in the airport and on the airplane.

11. As a parent, I oppose the burdens imposed by purchasing or otherwise obtaining masks for my children, keeping them on hand, and ensuring they are clean and in suitable condition to wear.

12. As a parent, I am concerned about possible health risks that wearing masks might pose to my children, including risks they learn about through conversations or news reports.

13. Consequently, I do not want my children to wear masks, including on airplanes or in airports.

14. I am concerned about the fact that some mask mandates have been reimposed, and am apprehensive that they could be reimposed in airports or on airplanes.

15. My children are concerned about the fact that some mask mandates have been reimposed, and are apprehensive that they could be reimposed in airports or on airplanes.

16. Because of my opposition to mask mandates, and my current understanding of the reported mask requirements at O'Hare International Airport in Chicago, Illinois, and airports in New York City, I currently intend to avoid traveling through those airports for as long as the requirement exists.

I declare under penalty of perjury that the foregoing is true and correct.

4-22-22
Date

_Matt Keane_
Name

APP. 33

# EXHIBIT 10

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No.:<br>4:22-cv-00209-O |

### Supplemental Affidavit of Anthony Richard Perkins

I, Anthony Richard Perkins, declare as follows:

1.      I am 59 years of age, a U.S. citizen, and a resident of Louisiana.

2.      I am the President of Family Research Council Action, Inc. (FRC Action), a nonprofit organization, advocating public policies that advance the Family Research Council's mission priorities of "Faith, Family, and Freedom."

3.      I speak regularly with FRC Action members, and am provided information on an ongoing basis regarding the views of FRC Action members, and their reactions to public policy and legal developments relevant to FRC Action mission-related items.

4.      Based on those numerous conversations, briefings, and other inputs, as well as the daily updates I receive, I believe I have clear knowledge and a firm understanding of the views of many FRC Action members regarding the subject-matter of this litigation.

5.      As part of "Freedom," FRC Action's mission includes opposing government actions that overreach lawful authority.

6.      Consequently, it is the position of FRC Action that the mask mandate President Biden ordered in Executive Order 13998 for commercial aircraft and airports—a mandate which was crafted and is maintained by the CDC, and was subsequently imposed by the agencies President Biden named in that Executive Order—is one such illegal mandate.

7.      FRC Action thus has a mission-related interest in opposing Executive Order 13998's mask mandate, and the CDC's ongoing actions regarding that mandate.

**APP. 35**

8.     FRC Action is participating in this lawsuit to advance its mission and to represent the interests of FRC Action members.

9.     Many FRC Action members find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

10.    Many of those FRC Action members find that wearing masks on airplanes and in airports interferes with their enjoyment of air travel, both in the airport and on the airplane.

11.     Many FRC Action members oppose the burdens imposed by purchasing or otherwise obtaining masks, keeping them on their person, and ensuring they are clean and in suitable condition to wear.

12.    Many FRC Action members are concerned about possible health risks relating to wearing masks, such as possible risks they learn about through conversations or news reports.

13.    Many FRC Action members are concerned about the fact that some mask mandates are being reimposed, and are apprehensive that they could be reimposed in airports and on airplanes.

14.    Many FRC Action members do not want to wear masks on airplanes or in airports.

15.    With approximately 26,000 members, it is virtually certain that there are FRC Action members on commercial flights in various locations across the United States on any given day.

16.    As part of our commitment to "Family," FRC Action advocates public policies that empower parents to act in what those parents believe to be the best interests of their children and other family members.

17.    Many FRC Action members are parents of minor children of all ages.

18.    FRC Action therefore has a germane mission interest in asserting the parental rights of those members.

19.    Many FRC Action members who are parents have children who find wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

20.    Many FRC Action members who are parents have children who find that wearing masks on airplanes and in airports interferes with their enjoyment of air travel, both in the airport and on the airplane.

21.    Many FRC Action members who are parents oppose the burdens imposed by purchasing or otherwise obtaining masks for their children, keeping them on their person, and ensuring they are clean and in suitable condition to wear.

**APP. 36**

22.     Many FRC Action members who are parents are concerned about possible health risks that wearing masks might pose to their children, including risks they learn about through conversations or news reports.

23.     Consequently, many FRC Action members do not want their children to wear masks on airplanes or in airports.

24.     With approximately 26,000 members, it is virtually certain that there are FRC Action members who are parents on commercial flights in various locations throughout the United States on any given day, accompanied by their children and often other family members as well.

25.     At last count, FRC Action has 1,493 members in Texas.

26.     At last count, FRC Action has 834 members in New York.

27.     At last count, FRC Action has 2,450 members in California.

28.     I am a member of FRC Action, as well as the President of that organization.

29.     I am the father of a 14 year-old child whose initials are S.P., who is a plaintiff here.

30.     S.P. frequently travels with me by commercial aircraft across the nation.

31.     My son S.P. finds wearing masks irritating, burdensome, uncomfortable, and makes breathing more difficult.

32.     My son S.P. finds that wearing masks on airplanes and in airports interferes with his enjoyment of air travel, both in the airport and on the airplane.

33.     My son S.P. does not want to have to wear a mask on airplanes or in airports.

34.     I do not want S.P. to have to wear a mask on airplanes or in airports.

35.     I travel extensively nationwide, including at times traveling through the airports in Chicago and New York City.

36.     Because of the public reports of possible mask requirements in airports in Chicago and New York City, I will take extra measures to try to avoid traveling through those airports.

37.     However, it appears practically necessary for me to travel through Los Angeles International Airport for an upcoming trip, where news outlets are currently reporting masks are again required for travelers in that California airport.

I declare under penalty of perjury that the foregoing is true and correct.


4/22/2022
Date

Name

3

**APP. 37**