## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | Civil Action No.: <br> 4:22-cv-00209-O |

## PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF

Plaintiffs respectfully submit this reply to Defendants' supplemental brief responding to this Court's supplemental briefing order of April, 18, 2022, ECF No. 28, to assess the implications of the vacatur of the CDC Order in *Health Freedom Defense Fund, Inc. v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), *appeal docketed*, No. 22-11287-AA (11th Cir. Apr. 21, 2022) (*HFDF*).  Plaintiffs reply to each of the three points made by Defendants.

I.      THE EFFECTS OF THE *HFDF* JUDGMENT ON REQUESTED RELIEF.

This Court should exercise its discretion to grant Plaintiffs relief.  It is noteworthy that Defendants nowhere suggest that this Court lacks discretion to issue an injunction.  Nor could they, given the authorities Plaintiffs cited.  Defendants are left citing cases where lower courts held that there was no point to additional relief or that additional orders would achieve nothing.  *See id.* Perhaps that true in those cases, but not here.  The *HFDF* decision was certainly helpful and a welcome development, but there are ample reasons for this Court to proceed with a preliminary injunction.

A.      **Concurrent percolation would never be possible if an injunction automatically precludes the irreparable harm prong of the test.**

Defendants provide no explanation for why the Supreme Court and circuit courts seem to have no problem adjudicating cases where one injunction overlaps another already in place.  First, there are recent published appellate cases from the Ninth and Eleventh Circuit cases discussed in Plaintiffs' opening supplemental brief.  *See Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021); *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019), discussed in ECF No. 30 at 2–5.  Defendants say nothing about how the Supreme Court has emphasized the importance for the nation for multiple appellate courts to weigh in on matters to tee them up for national resolution by the Justices, as those circuits did in those opinions.

Second, Defendants provide no explanation for the Supreme Court's recent cases involving—as this case—Administrative Procedure Act (APA) challenges to executive orders that were at issue in the two cases referenced in Plaintiffs' supplemental brief: *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017), *dismissed as moot*, 138 S. Ct. 353 (2017), and *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).[1]  Judge Watson of the District of Hawaii issued a nationwide injunction against the Trump Administration on March 15, 2017, *see Hawaii v. Trump,* 241 F. Supp. 3d 1119, 1140 (D. Haw. 2017), only to be followed by Judge Chuang out of the District of Maryland on March 16, 2017, *see Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539, 566 (D. Md. 2017).  If Defendants were correct, the second injunction should never have issued. Yet, in dealing with both cases, the Supreme Court never noted what according to Defendants should have been impossible.  The Supreme Court knows how to flag such defects, and the Court's not doing so suggests that simultaneous injunctions are not problematic.

**B.      The Mask Mandate's harms and collateral consequences.**

Defendants' contentions also misapprehend the nature of the harms caused by the Mask Mandate and the collateral consequences that Plaintiffs explained in their opening brief.  To begin, the effects of the Mask Mandate go beyond being forced to put on a mask at specific times and in specific places.  Plaintiffs' interests go broader than the current *HFDF* procedural posture, where the court's judgment is even now before the Eleventh Circuit.

First, regarding Plaintiffs' ongoing stake, the Supreme Court reasoned:

> The Government urges us to limit standing to those who have been "significantly" affected by agency action.  But, even if we could begin to define what such a test would mean, we think it fundamentally misconceived.  "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation— even though small—from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in

---

[1] *Hawaii* involved a Presidential Proclamation, not Executive Order, but that is a distinction without a difference here.

the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax. While these cases were not dealing specifically with § 10 of the APA, we see no reason to adopt a more restrictive interpretation of "adversely affected" or "aggrieved." As Professor Davis has put it: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*United States v. Students Challenging Regul. Agency Procs.* (*SCRAP*), 412 U.S. 669, 690 n.10

(1973) (cleaned up).

Here, moreover, Plaintiffs' continuing efforts to be prepared to comply with the Mask

Mandate make these harms irreparable. All the term "irreparable" means is the absence of any

remedy by which Plaintiffs can later recover monetary damages; and that is sufficient to show

irreparable harm. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464,

473 (5th Cir. 1985). There is no such recovery under the APA.

Although distinct, these principles of harm intersect mootness, where as relevant here "a

case is not necessarily moot because it's uncertain whether the court's relief will have any practical

impact on the plaintiff." *Dierlam v. Trump*, 977 F.3d 471, 477 (5th Cir. 2020) (citing *Chafin v.*

*Chafin*, 568 U.S. 165, 175 (2013)) ("Courts often adjudicate disputes where the practical impact

of any decision is not assured."). An injunction here would have practical effect because, again,

it would protect Plaintiffs from having to expend efforts to prepare to comply with the Mask

Mandate.

The collateral consequences explained in Plaintiffs' supplemental brief are also reinforced

in part by TSA's statement:

Due to today's court ruling, effective immediately, TSA will no longer enforce its Security Directives and Emergency Amendment requiring mask use on public transportation and transportation hubs. TSA will also rescind the new Security Directives that were scheduled to take effect tomorrow. CDC continues to recommend that people wear masks in indoor public transportation settings at this time.

*Statement Regarding Face Mask Use on Public Transportation*, TRANSP. SEC. ADMIN. (Apr. 18, 2022), https://tinyurl.com/tsarelease.  But TSA was not a defendant in *HFDF*, thus is not bound by the court order it referenced, and could attempt to reinstitute the Mask Mandate at any time.

So this is voluntary cessation.  As the Supreme Court has explained:

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways.  In accordance with this principle, the standard we have announced for determining whether a case can be mooted by the defendant's voluntary conduct is stringent:  A case might become moot if subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up) (emphasis added).

Plaintiffs would challenge any such resumption by TSA.  But FRC Action members need to remain prepared to comply with TSA or local health authorities as parallel litigation continues.  A second injunction in parallel litigation would provide Plaintiffs with greater security.

That is why, as one district court has put it, "overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief."  *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065–66 (N.D. Cal. 2019).  After citing several other cases, that court proceeded to discuss challenges to another federal policy, and "conclude[d] that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time— does not negate [the plaintiff's] claimed irreparable harm."  *Id.*  This Court should follow that approach here.

## II.   ARGUMENTS AND REQUESTED RELIEF ARE SIMILAR, BUT DISTINCTLY DIFFERENT.

After conferring with Defendants' counsel by phone on April 19, Plaintiffs believed that the parties might be in substantial agreement regarding how the arguments and requested relief here compare in practical effect to *HFDF*, reflecting that in the supplemental brief.  Upon reading Defendants' brief, it is clear that the parties significantly differ, so Plaintiffs reply as follows.

One clear difference is that the *HFDF* court was challenging the CDC Order issued January 29, 2021.  Plaintiffs here, by contrast, agree that the initial CDC action was arbitrary and capricious, but the gravamen of Plaintiffs' lawsuit is that the CDC's decision to extend the Mask Mandate past March 18, 2022 was arbitrary and capricious—a decision revealed to be even more clearly arbitrary and capricious after CDC's April 1, 2022 decision that COVID-19 had become such a non-issue for public health that Title 42 border safeguards will be terminated.  The March 18, 2022 extension is what prompted Plaintiffs' lawsuit and motion for preliminary injunction, and the April 1, 2022 decision prompted a motion for a temporary restraining order.

Defendants are thus mistaken in saying that Plaintiffs' arguments are subsumed by the claims in *HFDF*.  ECF No. 29 at 4.  The Middle District of Florida was evaluating exclusively whether CDC acted unlawfully in January 2021, including whether CDC's 2021 decision was arbitrary and capricious.  *HFDF*, 2022 WL 1134138, at *18.  In this case, Plaintiffs focus on how the March 18, 2022 decision was arbitrary and capricious, in failing to account for everything learned and revealed in the intervening 14 months.  Plaintiffs have made clear repeatedly that Plaintiffs believe the 2021 decision was arbitrary and capricious, and therefore that the 2022 action was *a fortiori* arbitrary and capricious—but even if the 2021 decision did not transgress the standard of 5 U.S.C. § 706(2)(A), subsequent events, data, and discoveries have since crossed the line, making the 2022 extension arbitrary and capricious.

Another difference is that *HFDF* did not fully explore the issue of what is necessary to satisfy 5 U.S.C. § 706(2)(A)'s arbitrary and capricious standard.  First, Plaintiffs in *HFDF* spent a short seven pages of total briefing on arbitrary and capricious review, citing a total of five cases, of which only one is controlling here: *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29 (1983).  Even then, it was solely for the quotation that the CDC "entirely failed to consider important aspects of the problem."  Opp'n to Mot. for Summ. J. 40, *HFDF*, No. 8:21-cv-1693 (M.D. Fla.), ECF No. 48 (brackets omitted) (cleaned up).  While correct that the Mask Mandate was arbitrary and capricious, that was not a fulsome exploration of what constitutes arbitrary and capricious action under Section 706(2)(A).

Second, the Middle District of Florida noted that an agency action must be, as then-Judge Kavanaugh put it, "both reasonable and reasonably explained."  *Multicultural Media, Telecom & Internet Council v. FCC*, 873 F.3d 932, 937 (D.C. Cir. 2017), *quoted in HFDF*, 2022 WL 1134138, at *18.  Faulting CDC for not even trying to explain how it reached its decision, the district court rested upon the Supreme Court's point that "[t]he fact that there may be a valid reason … does not establish that the agency considered it."  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (cleaned up with brackets omitted).

To be sure, there are similarities between what the district court decided and what Plaintiffs argue here.  *HFDF* discussed the relevant data, the need to articulate a reasonable explanation, to explain all major aspects of an issue, and that the agency's path must be reasonably discernable. *HFDF*, 2022 WL 1134138, at *19.  The district court also similarly found that CDC offered little or no explanation for the specifics of its decision, did not explain the exceptions it granted, and added that agencies can rely on experience, but only if the wisdom from that experience is actually explained.  *Id.* at *20.

6

But in contrast to all that, there are also many differences.  The *HFDF* court ruled solely on whether the decision was reasonably explained in 2021—holding it was not—leaving unanswered whether the items CDC did explain were reasonable explanations.  As already noted, Plaintiffs focus primarily on 2022's developments.  *HFDF* focuses on CDC alone and leaves other agency actors unbound by its injunction, leaving open the possibility of alternative routes for reimposing the Mask Mandate, while Plaintiffs have sued all relevant actors.

Plaintiffs here also press arguments and rely on authorities that the *HFDF* plaintiffs did not and the court in *HFDF* did not cite.  Plaintiffs here show that an agency must reassess "the wisdom of its policy on a continuing basis."  *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation marks omitted), *quoted in* ECF No. 11 at 17; ECF No. 15 at 18.  And Plaintiffs here challenge the substance of CDC's decisions embodied in the Mask Mandate.  Plaintiffs discuss the limited effectiveness of masks.  Plaintiffs challenge CDC on how much safer it is to breathe on an airplane where CDC requires masks as compared to restaurants where CDC does not, flagging such inconsistencies.  Plaintiffs discuss the benefits of natural immunity.  And Plaintiffs discuss the details of the Mask Mandate's additional risks upon children.  The *HFDF* court did not weigh in on those matters, while it does opine on temperature checks, testing protocols, and various other items, *see HFDF*, 2022 WL 1134138, at *19–20, that Plaintiffs here did not elaborate on due to space constraints.

Both the *HFDF* plaintiffs' arguments and the *HFDF* decision thus differ in significant ways from the arguments presented to this Court.  In addition to benefitting its members, a preliminary injunction opining on these items would significantly benefit FRC Action and its nonprofit mission.

III.   EFFECT OF A STAY ON REQUESTED RELIEF.

After conferring with Defendants' counsel by phone on April 19, Plaintiffs believed that the parties might be in substantial agreement regarding the effect of a potential stay.  Upon reading Defendants' brief, it is clear that the parties significantly differ, and Plaintiffs reply as follows.

Though Defendants' counsel did not explain the reason for their ongoing efforts to vindicate the Mask Mandate, their boss did:  "Our reason for appealing is we believe that the CDC has clear statutory authority for the Mask Mandate, and the CDC has assessed that it is necessary for the health of the American people—particularly the traveling public."  Remarks of Attorney General Merrick Garland, *quoted in* Charlie Savage & Sharon LaRaniere, *The U.S. Appealed to Reinstate Masks. But Is It Seeking to Win?*, N.Y. TIMES (Apr. 24, 2022), https://www.nytimes.com/2022/04/22/us/politics/biden-legal-strategy-mask-mandate.html.

It is still not clear if Defendants will seek a stay.  They did not do so in the district court, but that suggests nothing about whether Defendants will still seek a stay in the Eleventh Circuit.  If they do so, then the Mask Mandate could be reimposed at any moment and the need for a preliminary injunction from this Court would be even greater.

But even if Defendants do not seek a stay, this Court should still swiftly grant an injunction here.  Defendants' decision not to seek a stay goes to the heart of why Plaintiffs still have a concrete interest in this Court's granting injunctive relief.  Lawyers consulting with the White House are quoted in the above-cited news article—as well as other media outlets—as saying that Defendants' true interest here is in protecting the scope of the power that CDC claims in general, rather than forcing people to wear masks on airplanes in particular.  *See id.* (quoting Professor Gostin, identified as a legal adviser to the Administration on Mask Mandate litigation).

Yet FRC Action is litigating over that general power both in how Defendants are currently using it and how it might be used in the future. FRC Action's mission includes opposing unlawful government mandates insofar as they infringe upon individual liberty and parental rights. Pls.' Suppl. Br. App., ECF No. 31 at 21, 35–36 (App.). That mission interest will be furthered only by this Court's granting injunctive relief, and that interest is irreparably injured absent an injunction.

There is also a significant chance that an injunction from this Court could help resolve the collateral consequences FRC Action members are still experiencing after the *HFDF* decision. *See* ECF No. 30 at 17–18. Masks are still required in major New York City airports. *Id.* at 15. One FRC Action member who travels extensively expects to travel through JFK or LaGuardia while that local mask mandate is still in place, and if so will attempt to change his travel plans to avoid it. App. at 27. That aside, because there are 834 FRC Action members in New York, *id.* at 37, it is very likely that FRC Action members are traveling through those airports regularly, and thus subject to any such mandate. Masks are intermittently required in Chicago, and so on any given day might still be required at Chicago's O'Hare Airport. ECF No. 30 at 15. One FRC Action member who travels extensively lives in Chicago and has upcoming flights through O'Hare, and so expects to travel to and from that airport while any such potential mandate is still in place, App. at 24. At least one additional FRC Action member is booked through O'Hare in June. *Id.* at 30. Moreover, masks are still required at LAX. ECF No. 30 at 16. One FRC Action member who travels extensively sees no practical way to avoid LAX during an upcoming trip. App. at 27. That aside, because there are 2,450 FRC Action members in California, *id.* at 37, it is very likely that FRC Action members are traveling through that airport regularly, and are thus currently subject to that mandate. Setting aside local membership numbers, the above-mentioned airports are also major hubs for various airlines, meaning that many travelers from across the country travel through

9

them even if those airports are not those travelers' final destinations.  *See* Ricky Radka, *Airline Hub Guide: Which U.S. Cities are Major Hubs and Why It Matters*, AIRFAREWATCHDOG (Dec. 23, 2021),  https://www.airfarewatchdog.com/blog/50066526/airline-hub-guide-which-u-s-cities-are-major-hubs-and-why-it-matters/.  With 26,163 members nationwide, it is practically certain that multiple FRC Action members are traveling through all of those airports daily, suffering collateral consequences from the CDC's actions challenged in this lawsuit, as the Plaintiffs' brief cites those local authorities saying that their missions are to implement CDC's Mask Mandate.

But the Attorney General's remarks make clear that Defendants intend to preserve their power to reimpose mandates that FRC Action believes to be unlawful, both regarding masks now and possibly other requirements in the future.  Those remarks suggest Defendants, by not seeking a stay, could be pursuing a route to moot the case under the doctrine from *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

It is the breathtaking scope of the power to impose such mandates without satisfying the APA's requirement for reasoned decisionmaking that Plaintiffs seek to enjoin.  Defendants have not made this case moot, and coupled with the collateral consequences from CDC's unlawful actions, Plaintiffs are still suffering irreparable harm, including ongoing collateral consequences. An injunction against Defendants is appropriate here, as it would percolate this issue for national resolution.  Therefore, this Court should exercise its discretion to grant injunctive relief now.

## CONCLUSION

For all these reasons and those from previous filings, this Court should grant a preliminary injunction.

10

April 25, 2022

Respectfully submitted,

*/s/ Kenneth A. Klukowski*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Kenneth A. Klukowski
D.C. Bar No. 1046093
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

*Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 25, 2022, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, by using the Court's CM/ECF filing system.  I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kenneth A. Klukowski
Kenneth A. Klukowski

*Attorney for Plaintiffs*