UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FAMILY RESEARCH COUNCIL ACTION, INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | Civil Action No.: <br> 4:22-cv-00209-O |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO MAY 13, 2022 ORDER**

Plaintiffs respectfully submit this reply to Defendants' supplemental brief in response to the order of this Court issued on May 13, 2022. Plaintiffs agree with Defendants in part, but explain here why Defendants are incorrect on other arguments. Bottom line: Plaintiffs have an injury-in-fact, the case is not moot, and Plaintiffs are under substantial threat of irreparable harm.

The first two points in Defendants' short brief are puzzling. First, Defendants admit this case is not moot. ECF No. 41 at 2. But after admitting that, they argue in Janus-like fashion as if the Mask Mandate is in the rearview mirror. *Id.* Second, Defendants seemingly argue Plaintiffs have no injury-in-fact presently, *see id.*—which is incorrect—but once again their brief seems to face both ways, as they seem to acknowledge that an injury-in-fact did exist in March 2022. Since that is the only injury that is of any jurisdictional significance, that is presumably what this Court ordered briefing on. Given the confusion, Plaintiffs will address both of those items together with an integrated approach showing the relationship between the two. Plaintiffs will then address irreparable harm separately.

The term injury-in-fact merely refers to satisfying the first prong of the standing analysis. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*SBAL*); *see also Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015) (discussing cases). Suits fall short of this requirement when injuries are "imaginary or wholly speculative," *SBAL*, 573 U.S. at 160 (internal quotation marks omitted), which is clearly not the case here. The Supreme Court has rejected the argument that even a complaint's lack of detail does not result in a lack of standing where the court can "presume specific facts under which [plaintiffs] will be injured." *Bennett v. Spear*, 520 U.S. 154, 168 (1997). The Fifth Circuit adds that if the facts necessary for harm to the plaintiffs can be inferred, "the injury-in-fact standing requirement is satisfied." *Hotze*, 784 F.3d at 992 (brackets omitted). Injury-in-fact is assessed at the time the lawsuit is filed. "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991). The level of requisite detail and evidentiary burden increase throughout successive stages of litigation, *SBAL*, 573 U.S. at 158, but injury-in-fact is established *vel non* when the lawsuit commences.

The Supreme Court has clarified doctrinal issues regarding injury-in-fact that Defendants seem to confuse in terms of the relationship between injury-in-fact (and standing in general, for that matter) and mootness. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–92 (2000). "Careful reflection on the long-recognized exceptions to mootness," such as those Plaintiffs claim here, "reveals that the description of mootness as 'standing set in a timeframe' is not comprehensive." *Id.* at 190. Yet that long-rejected concept of ongoing injury-in-fact as a requirement that must be refreshed throughout successive litigation timeframes is what Defendants seem to reference in their supplemental brief.

For standing at the outset of litigation, "it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by litigation, the defendant's allegedly wrongful behavior will likely occur or continue." *Id.* That is to say, the plaintiff must show an injury-in-fact when the case is filed. Once standing is established, however, the calculus and burden shift to mootness. The collateral consequences Plaintiffs continue to experience might satisfy the burden of standing even now if the Court would to conclude they are traceable to the Mask Mandate, but that is not what Article III requires in any event once a suit is underway. "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 189 (cleaned up). The Supreme Court added that when a defendant begins to voluntarily comply, that defendant "bears the *formidable* burden of showing that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190 (emphases added). Even more, Defendants must show that it is *impossible* for a court to grant *any* relief. *Knox v. SEIU Local 1000*, 567 U.S. 298, 307 (2012). It is far from clear that the Mask Mandate will not return in full force, and it is quite possible that this Court can grant additional relief, both for this mandate and for additional assertions of the same authority Defendants could attempt to impose. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted).

CDC's Mask Mandate would be directly and fully in force right now if not for the April 18, 2022, decision from the Middle District of Florida. That decision is being appealed and could be narrowed or reversed. CDC asserts that the Mask Mandate is necessary for public health and makes plain it will resume the moment it can. In the interim, TSA has temporarily paused its implementation action, but stands ready to resume enforcement, and could do so at any moment;

it need not wait for an appellate reversal. Other actors continue to enforce the Mask Mandate right now—including on FRC Action members—and those collateral consequences show no signs of abating. Quite the contrary, as noted in Plaintiffs' May 19, 2022 brief, the airport in Bangor, Maine has only recently *reimposed* the Mask Mandate, so those collateral consequences are worsening. Defendants have not addressed them, acting as if they are truly independent actions. But as the materials cited by Plaintiffs make clear, these actors are implementing the Mask Mandate because they regard the CDC policy as authoritative, and are ignoring the conclusion of *Health Freedom Defense Fund, Inc. v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022) (*HFDF*), *appeal docketed*, No. 22-11287-AA (11th Cir. Apr. 21, 2022), that the Mask Mandate is not supported by current data and medical science.

Additionally, some of Plaintiffs' injuries-in-fact currently persist. The compliance costs of FRC Action members have not been reimbursed, so that financial injury is as real today as on March 23, 2022. And FRC Action's expenditures against the Mask Mandate likewise cannot be monetarily remedied. Beyond that, Plaintiffs are unaware of any precedent that precludes this Court from regarding the collateral consequences Plaintiffs continue to face as an injury-in-fact. Both sides can present plausible arguments about traceability and redressability, but the fact that those consequences are an injury inflicted by CDC's Mask Mandate cannot seriously be contested.

In addition to the individual injuries inflicted both directly and indirectly by the Mask Mandate, FRC Action continues to expend resources opposing the Mask Mandate to advance its mission of combatting illegal federal overreach and interference with parental authority. It is distinctly possible that a clear declaratory opinion from a second court—this Court—forcefully explaining why CDC's policy is arbitrary and capricious may persuade these actors that Judge Mizelle's opinion is not an anomaly those actors can write off. Instead, they might cease and

desist. But even if this Court's opinion does not persuade them, as this issue percolates it will accelerate appellate resolution—even Supreme Court resolution if necessary—that will end this unlawful policy. It is true that these actors might disregard even a Supreme Court opinion that CDC is not "following the science." But these are political actors, and as judicial scrutiny intensifies on the arbitrariness of CDC's actions, there is a substantial likelihood that these democratically accountable officials will disassociate themselves from unlawful actions. "However small that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness." *Id.* at 176 (internal quotation marks omitted).

As an example of this approach, if the Supreme Court could hold that a labor dispute that had already been resolved was still fit for adjudication because a court opinion on a then-past dispute would impact and inform assessments of future labor disputes, *see Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 124–25 (1974), then an opinion on the legality of a Mask Mandate that is not yet been resolved—still on the books in the *Federal Register*—will certainly impact what sort of mandates CDC can impose in the future. FRC Action has a mission interest in that outcome.

Given that injury-in-fact has been established, the question for this Court at this point in litigation is one of mootness, not of standing. The distinction is that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Laidlaw*, 528 U.S. at 190. And as explained in Plaintiffs' May 19, 2022 brief, there are no fewer than three mootness exceptions that apply here. Defendants have not carried their burden to prove otherwise.

While the threat of irreparable harm is admittedly a closer question under these circumstances, the threat is sufficient to place the matter of a preliminary injunction squarely

within this Court's discretion.  While additional harm is not *certain*, these facts show there is a *substantial threat* that Plaintiffs will suffer such harm.  That is all the analysis requires.

Both the Ninth Circuit and the Eleventh Circuit believed the irreparable-harm factor of the injunction test was satisfied in the cases Plaintiffs have previously discussed—twice.  Defendants still have never explained why those appeals courts were wrong, or how to square Defendants' position with those courts' reasoning that the Supreme Court encourages percolation of nationwide controversies like the Mask Mandate to set the stage for potential nationwide resolution.  Neither do Defendants admit that if their argument were correct no two courts could ever weigh in concurrently with preliminary injunctions.  The Supreme Court's practice of welcoming such cases, as discussed in previous briefs, cannot be reconciled with Defendants' arguments.

Looking to those situations—both similar to this case as APA challenges involving executive action imposing nationwide policy—one inference is that the appellate courts concluded that one district court's granting an injunction was such a thin reed—one out-of-circuit decision—provided so little protection that the second court concluded that the plaintiffs in the second case still faced a substantial threat of irreparable harm.  This Court should do the same here.

But again, Plaintiffs acknowledge that irreparable harm is a closer call than the other two briefing questions.  If this Court does not believe the threat of additional harm suffices to meet the preliminary injunction standard, then Plaintiffs suggest holding that motion in abeyance so that the parties can proceed to file motions for summary judgment.

May 23, 2022                                             Respectfully submitted,

                                                         */s/ Kenneth A. Klukowski*
                                                         Mark R. Paoletta*
                                                         D.C. Bar No. 422746
                                                         Gene C. Schaerr*
                                                         D.C. Bar No. 416368
                                                         Kenneth A. Klukowski

        D.C. Bar No. 1046093
        SCHAERR | JAFFE LLP
        1717 K Street NW, Suite 900
        Washington, DC 20006
        Tel: (202) 787-1060
        Facsimile: (202) 776-0136
        kklukowski@schaerr-jaffe.com

*Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On May 23, 2022, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, by using the Court's CM/ECF filing system. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

        */s/ Kenneth A. Klukowski*
        Kenneth A. Klukowski

        *Attorney for Plaintiffs*